# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

HARRY HOLT, *et al.*,

                 Appellants,

     vs.

ALPER HOLDINGS USA, INC.,

                 Appellee.

Case No. 08-cv-3344

## NOTICE OF MOTION

PLEASE TAKE NOTICE that appellants Harry Holt et al. will move this Court, at a place and time to be determined, for an order pursuant to Fed. R. Civ. P. 42 to consolidate this case with *Flake v. Alper Holdings USA, Inc.*, 08-cv-2489-CM; *Armstrong v. Alper Holdings USA, Inc.*, 08-cv-3625-GBD; and *Adkins v. Alper Holdings USA, Inc.*, 08-cv-____ (appeal from bankruptcy order filed on April 10, 2008, but not yet docketed with this Court).

In support of this motion, appellants rely upon the accompanying memorandum of law and the records in all four cases.

Dated:  April 16, 2008.             Respectfully submitted,
      New York, NY

                              NAACP LEGAL DEFENSE & EDUCATIONAL
                              FUND, INC.

                By:     */s/ Matthew Colangelo*
                      Matthew Colangelo (MC-1746)
                      Debo P. Adegbile (DA-0072)
                      99 Hudson St., 16th Floor
                      New York, NY 10013
                      Telephone: (212) 965-2200

                -and-

Lorraine S. McGowen, Esq. (LM-1644)
Alyssa D. Englund, Esq. (AE-2300)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York  10103
Telephone: (212) 506-5000

Counsel for Appellants Harry Holt et al.

## CERTIFICATE OF SERVICE

I certify that I served, by email and by first-class mail with postage prepaid, a true and correct copy of the foregoing to:

Jessica L. Fink
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
*Attorney for Appellee Alper Holdings USA, Inc.*

Douglas T. Tabachnik
Law Offices of Douglas T. Tabachnik, P.C.
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Cliff I. Taylor
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Dated: <u>April 16, 2008</u>.

<u>    */s/ Matthew Colangelo*                    </u>
Matthew Colangelo (MC-1746)
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013
Telephone: (212) 965-2268

*Attorney for Appellants Harry Holt et al.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HARRY HOLT, *et al.*,<br><br>                    Appellants,<br><br>v.<br><br>ALPER HOLDINGS USA, INC.,<br><br>                    Appellee. | Case No. 08-cv-3344 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE

Appellants Harry Holt, Beatrice Holt, Sheila Holt-Orsted, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt, and David Brown (the "Holt Plaintiffs") submit this memorandum of law in support of their motion to consolidate.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ii

BACKGROUND ............................................................................................................... 1

    The Holt Plaintiffs...................................................................................................... 1

    The Flake Plaintiffs................................................................................................... 2

    The Armstrong Plaintiffs .......................................................................................... 3

    The Adkins Plaintiffs ................................................................................................ 4

ARGUMENT .................................................................................................................... 5

CONCLUSION.................................................................................................................. 7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*B.D. ex rel. Jean Doe v. DeBuono*,
   193 F.R.D. 117 (S.D.N.Y. 2000) ......................................................................... 6, 7

*Bank of Montreal v. Eagle Associates*,
   117 F.R.D. 530 (S.D.N.Y. 1987) ........................................................................... 6

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ........................................................................... 5, 6

*Katz v. Realty Equities Corp.*,
   521 F.2d 1354 (2d Cir. 1975) ............................................................................... 6

*Martin v. Campanaro*,
   156 F.2d 127 (2d Cir. 1946) ................................................................................. 6

*Olsen v. New York Community Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ......................................................................... 7

## OTHER AUTHORITIES

9 Wright & Miller, Federal Practice & Procedure § 2384 (2d ed. 1994) ....................................... 7

Fed. R. Civ. P. 1 .............................................................................................................. 5

Fed. R. Civ. P. 42 ......................................................................................................... 5, 7

Local Civil Rule 1.6 ......................................................................................................... 5

## BACKGROUND

This action is one of four appeals that arise from overlapping legal rulings issued by Bankruptcy Judge Lifland in *In re Alper Holdings USA, Inc.*, 07-12148 (Bankr. S.D.N.Y.).  In three separate opinions in the same bankruptcy action, Judge Lifland resolved the claims of four groups of tort plaintiffs – the Holt Plaintiffs, the Flake Plaintiffs, the Armstrong Plaintiffs, and the Adkins Plaintiffs – by granting the objections of the debtor, Alper Holdings USA, Inc. ("Alper"), to all four sets of claims.

The claims of the four groups of tort plaintiffs all arise out of allegations regarding groundwater contamination caused by the disposal of the toxic chemical trichloroethylene ("TCE") in Dickson County, Tennessee.  Alper is a defendant in lawsuits filed by each group of tort plaintiffs.  The claims of the tort plaintiffs came to the Bankruptcy Court for the Southern District of New York after Alper filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court in July 2007.  A brief description of the four sets of claims follows.

The Holt Plaintiffs

The litigation that forms the basis of the Holt Plaintiffs' claims was filed in state court in December 2003, against Alper, an Alper subsidiary named Saltire Industrial ("Saltire"), the County of Dickson, and the City of Dickson, alleging state-law claims for personal injury and property damage caused by the contamination of their well-water with TCE.  The Holt Plaintiffs subsequently amended their complaint to add federal statutory and constitutional civil rights claims for intentional racial discrimination against the City, the County, two agencies of the State of Tennessee, and the United States Environmental Protection Agency.  The litigation has been

transferred to the federal district court for the Middle District of Tennessee, where it is currently proceeding against all defendants except Alper.

The Holt Plaintiffs' complaint alleges that Alper is the alter ego of its subsidiary, Saltire, and that Alper should therefore be held liable to the Holt Plaintiffs for their personal injury, wrongful death, and property damages.

On July 13, 2007, Alper filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Each of the Holt Plaintiffs timely filed a proof of claim with the Bankruptcy Court. Alper objected to the Holt Plaintiffs' claims, arguing that those claims should be disallowed for two reasons: first, because alter ego claims against Alper belonged to Saltire and were released in Saltire's earlier bankruptcy; and second, because Alper could not be held responsible on an alter ego theory of liability even if alter ego claims were not released. Judge Lifland granted Alper's objection, accepting the first of Alper's two arguments – namely, that the Holt Plaintiffs could not assert alter ego claims against Alper because those claims had been released. *See* Order Granting Objections to Armstrong and Holt Claims 7-11 (Ex. A). The Holt Plaintiffs timely filed this appeal.

<u>The Flake Plaintiffs</u>

The Flake Plaintiffs' claims are based on their lawsuit filed in Tennessee state court in February 2004, alleging that numerous defendants are responsible for property damage caused by TCE contamination in Dickson County. As to Alper, the Flake Plaintiffs alleged both that Alper is indirectly liable for their property damage as the alter ego of its subsidiary, and that Alper is directly liable because of negligent remediation.

The Flake Plaintiffs filed proofs of claim in the Bankruptcy Court following Alper's petition for bankruptcy relief, and Alper objected to the Flake Plaintiffs' claims. Judge Lifland

held that Alper had no direct liability to the Flake Plaintiffs because Alper owed no duty to the

Flake Plaintiffs, *see* Order Granting Objection to Flake Claims 6-9 (Ex. B), and also rejected the

Flake Plaintiffs' claims of alter ego liability because the Flake Plaintiffs had not alleged

sufficient facts to state a claim, *see id.* at 11-12.  Judge Lifland noted but did not resolve Alper's

argument that alter ego claims had been released.[1]  *See id.* at 12 ("Regardless of whether the

Flake Plaintiffs' alter ego claims were released under Saltire's plan of reorganization as Alper

contends, the Court finds that no such claims may be asserted against Alper as a matter of law.").

The Flake Plaintiffs filed an appeal, which has been docketed in this Court at 08-cv-2489-CM.

<u>The Armstrong Plaintiffs</u>

The Armstrong Plaintiffs' claims are based on their lawsuit filed in Tennessee state court

in April 2004, alleging that numerous defendants are responsible for property damage caused by

TCE contamination in Dickson County.  The Armstrong Plaintiffs, like the Flake Plaintiffs,

alleged both that Alper is indirectly liable for their property damage as the alter ego of its

subsidiary, and that Alper is directly liable because of negligent remediation.

The Armstrong Plaintiffs filed proofs of claim in the Bankruptcy Court, and Alper

objected to those claims.  Judge Lifland granted Alper's objection to the Armstrong Plaintiffs'

claims, holding that Alper had no direct or indirect liability to the Armstrong Plaintiffs.  *See*

Order Granting Objections to Armstrong and Holt Claims 4-7 (Ex. A).  Judge Lifland applied the

law of the case doctrine and expressly relied on his ruling against the Flake Plaintiffs to grant the

objections to the Armstrong Plaintiffs' claims.  *See id.* at 7 (noting that law of the case is a

---

[1] Judge Lifland held argument and issued his order resolving the Flake claims before hearing or resolving the Holt claims; as noted above, Judge Lifland did hold as against the Holt Plaintiffs that alter ego claims had been released.

"discretionary doctrine," but holding that "the Court sees no reason to part ways with the reasoning and rationale previously set forth in the Flake Opinion").

The Armstrong Plaintiffs filed an appeal on March 5, 2008, which has been docketed with this Court at 08-cv-3625-GBD.

<u>The Adkins Plaintiffs</u>

The Adkins Plaintiffs' claims are based on their lawsuit filed in Tennessee state court in December 2004, alleging personal injury claims on behalf of a group of families whose children suffered cleft palate and other orofacial disfigurements resulting from exposure to TCE-contaminated water in Dickson County.  The Adkins Plaintiffs alleged both that Alper is indirectly liable for their personal injuries as the alter ego of its subsidiary, and that Alper is directly liable because of negligent remediation and the assumption of duty.[2]

The Adkins Plaintiffs filed proofs of claim in the Bankruptcy Court following Alper's petition for bankruptcy relief, and Alper objected to those claims.  Relying on his prior rulings against the Flake Plaintiffs, Holt Plaintiffs, and Armstrong Plaintiffs, Judge Lifland granted Alper's objections to the Adkins Plaintiffs' claims, holding that Alper had no direct or indirect liability to the Adkins Plaintiffs.  *See* Order Granting Objection to Adkins Claims 11-14 (Ex. C). With regard to the Adkins Plaintiffs' alter ego claims, Judge Lifland specifically relied on his ruling against the Holt Plaintiffs that alter ego claims had been released in the earlier bankruptcy proceeding of Alper's subsidiary.  *See id.* at 8 ("As can be [seen] from the following, the prior holding regarding the Holt Plaintiffs' alter ego claims applies equally to the current Adkins Claimants."); *see also id.* at 14 ("Despite this Court's prior opinions, the Adkins Claimants argue in the alternative that Alper is indirectly liable to the Adkins Claimants on the basis that Saltire

---

[2] The Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs are represented by the same counsel.

4

was an alter ego of Alper during the negligent remediation of the Dickson Plant.  The Court does

not see any benefit in revisiting this issue again except to draw the Adkins Claimants' attention

to that portion of the Holt/Armstrong Opinion [that held that alter ego claims were released].").

The Adkins Plaintiffs filed an appeal on April 10, 2008, which has not yet been docketed

with this Court.

## ARGUMENT

Rule 42(a) of the Federal Rules of Civil Procedure permits a district court to order

consolidation when "actions before the court involve a common question of law or fact." [3]  The

court has broad discretion to grant consolidation in the interest of promoting efficiency and

minimizing unnecessary cost or delay.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85

(2d Cir. 1990); *see also* Fed. R. Civ. P. 1 ("These rules . . . should be construed and administered

to secure the just, speedy, and inexpensive determination of every action and proceeding.").

The four appeals at issue arise out of the same general factual circumstances regarding

groundwater contamination in Dickson County, Tennessee.  All four appeals are from rulings of

Bankruptcy Judge Lifland in the same bankruptcy action below, *In re Alper Holdings USA, Inc.*,

07-12148 (Bankr. S.D.N.Y.).  All four appeals involve the legal question of whether Alper can

be held liable, either directly or indirectly, for the harms cause by TCE contamination in Dickson

County.  And as is apparent from Judge Lifland's rulings, the four appeals all involve common

questions of both law and fact.  Judge Lifland himself treated dispositive legal questions as law

of the case when those same questions arose in the context of subsequent claim objections.  *See,*

*e.g.*, Order Granting Objections to Armstrong and Holt Claims 7 (Ex. A); Order Granting

---

[3] In addition, Local Civil Rule 1.6, "Duty of Attorneys in Related Cases," provides that "[i]t shall be the continuing duty of each attorney appearing in any civil or criminal case to bring promptly to the attention of the clerk all facts which said attorney believes are relevant to a determination that said case and one or more pending civil or criminal cases should be heard by the same judge, in order to avoid unnecessary duplication of judicial effort."

Objection to Adkins Claims 8-14 (Ex. C).  These common circumstances render the four appeals ideal for consolidation in the interest of judicial economy and fairness to the parties.  *See Johnson*, 899 F.2d at 1284-85; *see also Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir. 1946) (affirming the consolidation of appeals from unsuccessful claims in the same bankruptcy action).

Separate appeals would create the risk of inconsistent rulings and would result in an inefficient use of judicial resources.  For example, Alper argued with regard to each of the four sets of claims below that alter ego causes of action against it could not proceed because those causes of action had been released in a related bankruptcy.  If the four appeals to this Court proceed independently and are assigned to four different reviewing judges, there is a risk of inconsistent rulings on this and other identical legal questions, with the concomitant duplication of judicial effort.  Consolidation is thus warranted to avoid inconsistent results, *see Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) ("One of the primary objectives of consolidation is to prevent separate actions from producing separate results."), and to make the most efficient use of the Court's resources, *see Johnson*, 899 F.2d at 1285 ("In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation."); *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir. 1975).

To be sure, the factual and legal issues in the four appeals are not completely identical. The Holt Plaintiffs alleged that Alper was liable for their personal injury and property damage claims on an alter ego theory of responsibility only, whereas the three remaining groups of tort plaintiffs alleged both indirect liability on an alter ego theory as well as direct liability for inadequate remediation.  However, perfect identity of factual and legal issues is not required for consolidation.  As this Court has explained, "[i]t is well settled that even one substantial common question of law or fact is enough for commonality under Rule 42(a)."  *B.D. ex rel. Jean Doe v.*

6

*DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (citing 9 Wright & Miller, Federal Practice & Procedure § 2384 at 451 (2d ed. 1994)).  As noted above, the overwhelming overlap in factual and legal issues among the four appeals is sufficient for commonality under Rule 42(a), even if there are some questions not common to all of the actions.

Moreover, consolidation will not cause any prejudice to Alper.  In fact, by allowing for coordinated briefing and argument of overlapping legal arguments, consolidation would preserve Alper's assets by reducing its costs.  The Holt Plaintiffs submit that "[t]here is, in short, nothing to be gained by requiring this matter to proceed as [four] separate cases."  *Olsen v. N.Y. Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005).

## CONCLUSION

For the foregoing reasons, the Holt Plaintiffs request that the Court grant their motion to consolidate, and consolidate the present action with *Flake v. Alper Holdings USA, Inc.*, *Armstrong v. Alper Holdings USA, Inc.*, and *Adkins v. Alper Holdings USA, Inc.*

Dated:  April 16, 2008.                          Respectfully submitted,
      New York, NY

                                         NAACP LEGAL DEFENSE & EDUCATIONAL
                                         FUND, INC.

                     By:  _____*/s/ Matthew Colangelo*_____
                                         Matthew Colangelo (MC-1746)
                                         Debo P. Adegbile (DA-0072)
                                         99 Hudson St., 16th Floor
                                       New York, NY 10013
                                       Telephone: (212) 965-2200

                  -and-

                                         Lorraine S. McGowen, Esq. (LM-1644)
                                       Alyssa D. Englund, Esq. (AE-2300)
                                       ORRICK, HERRINGTON & SUTCLIFFE LLP

666 Fifth Avenue
New York, New York  10103
Telephone: (212) 506-5000

Counsel for Appellants Harry Holt et al.

## CERTIFICATE OF SERVICE

I certify that I served, by email and by first-class mail with postage prepaid, a true and correct copy of the foregoing to:

Jessica L. Fink
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
*Attorney for Appellee Alper Holdings USA, Inc.*

Douglas T. Tabachnik
Law Offices of Douglas T. Tabachnik, P.C.
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Cliff I. Taylor
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Dated: <u>April 16, 2008</u>.

<u>   */s/ Matthew Colangelo*   </u>
Matthew Colangelo (MC-1746)
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013
Telephone: (212) 965-2268

*Attorney for Appellants Harry Holt et al.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRY HOLT, *et al.*,<br><br>              Appellants,<br><br>    vs.<br><br>ALPER HOLDINGS USA, INC.,<br><br>              Appellee. | Case No. 08-cv-3344 |

## DECLARATION OF MATTHEW COLANGELO

Matthew Colangelo, pursuant to penalty of perjury under 28 U.S.C. § 1746, does hereby state the following:

I am an attorney with the NAACP Legal Defense & Educational Fund, Inc., and I am counsel for the Appellants in the above-captioned matter.  I submit this Declaration in support of Appellants' motion to consolidate.  Attached to this Declaration are true and correct copies of the following exhibits:

Ex. A    Order Granting Objections to Armstrong and Holt Claims (Feb. 25, 2008) (Doc. No. 157 on the docket of the bankruptcy action below).

Ex. B    Order Granting Objection to Flake Claims (Jan. 15, 2008) (Doc. No. 123 on the docket of the bankruptcy action below).

Ex. C    Order Granting Objection to Adkins Claims (Apr. 3, 2008) (Doc. No. 199 on the docket of the bankruptcy action below).

Dated:   APRIL 16, 2008 .
      New York, NY

MATTHEW COLANGELO

## CERTIFICATE OF SERVICE

I certify that I served, by email and by first-class mail with postage prepaid, a true and correct copy of the foregoing to:

Jessica L. Fink
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
*Attorney for Appellee Alper Holdings USA, Inc.*

Douglas T. Tabachnik
Law Offices of Douglas T. Tabachnik, P.C.
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Cliff I. Taylor
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Dated: <u>April 16, 2008</u>.

<u>    /s/ Matthew Colangelo                    </u>
Matthew Colangelo (MC-1746)
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013
Telephone: (212) 965-2268

*Attorney for Appellants Harry Holt et al.*

Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter:   11 |
| ALPER HOLDINGS USA, et al. | Case No.:  07-12148 (BRL) |
|  | Jointly Administered |
| Debtors. |  |

## MEMORANDUM DECISION AND ORDER GRANTING OBJECTIONS
## OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM FILED BY
## (i) ARMSTRONG PLAINTIFFS AND (ii) HOLT PLAINTIFFS

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and expunging (i) claim numbers 12 and 13 (the "Armstrong Claims") filed by the Armstrong Plaintiffs[1] (the "Armstrong Objection") and (ii) claim numbers 35 through 45 (the "Holt Claims," and together with the Armstrong Claims, the "Claims") filed by the Holt Plaintiffs[2] (the "Holt Objection," and together with the Armstrong Objection, the "Objections"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Armstrong Plaintiffs and the Holt Plaintiffs oppose the Objections.

For the reasons set forth below and at oral argument, and in accordance with this Court's previous Memorandum Decision on Objection of Alper to Proofs of Claim (Claim Nos. 29 and 21) filed by Flake Plaintiffs dated January 15, 2008 (the "Flake Opinion"), the Court finds Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Claims are disallowed.

---

[1]     The Armstrong Plaintiffs include Charlotte Armstrong and Jon Armstrong (together, the "Armstrong Plaintiffs").

[2]     The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Holt Plaintiffs").

## BACKGROUND

This Court has previously discussed the facts and circumstances preceding Alper's bankruptcy at length in the Flake Opinion, including a discussion of Saltire and the contamination in Dickson County, Tennessee, and the Court generally refers all parties to the Flake Opinion. Briefly, the Armstrong Claims and Holt Claims, much like other claims this Court has had the opportunity to address in these proceedings, both arise in connection with groundwater contamination and environmental problems that arose as far back as the mid-1960's in Dickson County, Tennessee, that were allegedly caused, in part, by Saltire (an incidental and indirect subsidiary of Alper). From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the "Dickson Plant") where it made automotive tire valves and associated products and where trichloroethylene ("TCE") was used as a degreaser. The Dickson Plant ceased operations in March 1985. Since filing for bankruptcy on July 13, 2007, numerous parties have filed claims against Alper based on, among other things, Saltire's alleged contamination in Dickson County.

### The Flake Opinion

On January 15, 2008, this Court issued the aforementioned Flake Opinion, which granted Alper's objection to certain claims asserted by Cathy and Ray Flake (together, the "Flake Plaintiffs") arising out of claims similar to those presently at issue for personal and property damages based upon the alleged contamination in Dickson County. *In re Alper Holdings USA*, 07-12148 (BRL), 2008 WL 160203 (Bankr. S.D.N.Y. Jan. 15, 2008). In that instance, the Flake Plaintiffs claimed (the "Flake Claims") to have suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or maintain the disposal of the TCE at all locations throughout Dickson."

17584135\V-1

As is also presently the case, the Flake Plaintiffs alleged theories of both direct and indirect liability against Alper.

This Court granted Alper's objection and disallowed the Flake Claims based in large part upon the facts that (i) Alper's ownership interest in Saltire was not only indirect but also incidental as Alper only became the controlling shareholder of Saltire in connection with the reorganization of Saltire's parent First City Industries, Inc.[3] ("First City") and (ii) Alper had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed.  Specifically, this Court found that Alper had no direct liability to the Flake Plaintiffs because (a) it was Saltire and not Alper that operated the Dickson Plant and, therefore, Alper owed no duty of care to the Flake Plaintiffs, and (b) the Flake Plaintiffs failed to set forth any facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County that would support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs.  *Id.* at *4-5.

This Court also found that Alper had no indirect liability to the Flake Plaintiffs on either a theory of alter ego or piercing the corporate veil because neither the existence of a management agreement between Alper and Saltire nor a common employee between the parent and subsidiary would justify the extraordinary remedy of piercing the corporate veil as argued by the Flake Plaintiffs.  *Id.* at *5-6.  In so holding, the Court clearly held that "Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee."  *Id*. at *7.  With that introduction in mind, the Court now proceeds with the claims presently at issue.

---

[3]      As a creditor of First City, Alper received shares of stock as a stock-for-debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization.  *See* Transcript of January 8, 2008 Hearing, at 25-26.

## THE ARMSTRONG CLAIMS

On or about September 19, 2007, the Armstrong Plaintiffs filed their original proofs of claim (the "Original Proofs of Claim") asserting contingent, unliquidated, and disputed property damage claims against Alper.  The Original Proofs of Claim <u>were based entirely upon a complaint</u> filed by the Armstrong Plaintiffs against Alper (along with 18 other named defendants) on or about April 8, 2004 (the "Armstrong Complaint"), in which the Armstrong Plaintiffs claim to have suffered a "diminution" in the value of certain real property as a direct result of the "defendants" alleged contamination in Dickson County.  The Armstrong Complaint alleged that Alper was liable for the property damages asserted based upon (a) Alper's own "direct acts and omissions" and (b) a theory that Alper was Saltire's successor-in-interest.  While the Armstrong Complaint alleged that Alper was liable for its own direct acts, the complaint failed to detail with any specificity what those direct acts might actually entail; rather, the Armstrong Plaintiffs relied on broadly pled causes of action asserted generally against the "defendants."

On February 6, 2008, however, the Armstrong Plaintiffs, undoubtedly daunted by the Flake Plaintiffs' holding, amended the Original Proofs of Claims (the "Amended Proofs of Claim").[4]  In the Amended Proofs of Claim, the Armstrong Plaintiffs contend for the first time that they were not alleging that Alper caused or contributed to the initial contamination in Dickson County, but rather, that Alper assumed control of the remediation efforts in Dickson

---

[4]     Alper has objected to the filing of the Amended Proofs of Claim contending that the filing of the Amended Proofs of Claim some five months after the expiration of the September 21, 2007 bar date is "an impermissible amendment to the Original Armstrong Claims because they are based on a set of facts and theory of liability completely different than those asserted in the Original Armstrong Claims and there is no equitable reason to permit the late-filed claims."  Objection of Alper Holdings USA to Amendment of Proofs of Claim (Claim Nos. 12 and 13) Filed by Armstrong Plaintiffs dated February 20, 2008, at ¶ 3.

County and conducted such remediation in a negligent manner.  The pleadings attached to the

Amended Proofs of Claim sought to build upon the theory first introduced by the Flake Plaintiffs

that Alper controlled the remediation in Dickson County (and assumed a duty to the Armstrong

Plaintiffs) by further alleging that Nicholas Bauer, the same common employee of Saltire and

Alper previously discussed in the Flake Opinion, oversaw the remediation in Dickson County on

behalf of Alper.[5]  More precisely, the Amended Proofs of Claim allege that Mr. Bauer: (a)

considered himself an employee of Alper and not Saltire, (b) was hired by Alper for the sole

purpose of overseeing the remediation in Dickson County, (c) represented himself as an Alper

official who had responsibility for environmental matters at Saltire, and (d) operated from an

office in Virginia, a jurisdiction where only Alper and not Saltire was authorized to do business.

Alper objects to the Armstrong Claims arguing that they (as reformulated in the

Amended Proofs of Claims) are fundamentally the same negligent remediation claims that the

Court previously dispensed with in the Flake Opinion.  Additionally, Alper contends that even if

all of the allegations regarding Mr. Bauer are taken as true, the Flake Plaintiffs have still failed to

"allege a plausible basis for liability against Alper."  Alper further contends that any claims for

alter ego or successor liability must be disallowed because such claims were property of Saltire's

bankruptcy estate and were released under Saltire's plan of reorganization (the "Saltire Plan").

In contrast, the Armstrong Plaintiffs claim that the Armstrong Claims should not be

dismissed because *inter alia* (a) the Armstrong Plaintiffs' proofs of claim contained sufficient

allegations to survive what they contend is a motion to dismiss, and (b) the Armstrong Plaintiffs'

---

[5]    The Flake Plaintiffs previously alleged that Mr. Bauer was not an employee of Saltire at
all, but rather was hired solely by Alper to deal with the remediation in Dickson County.
The Court, however, previously held that not only was Mr. Bauer clearly an employee of
Saltire (specifically, vice president of environmental affairs), but also that that he was
acting on behalf of Saltire and not Alper in overseeing or participating in the remediation
in Dickson County.  *In re Alper Holdings,* 2008 WL 160203, at *6.

17584135\V-1

alter ego claims against Alper could not have been released under the Saltire Plan because the Armstrong Plaintiffs' alter ego claims were not property of the estate.

As previously discussed in the Flake Opinion, the fact that a parent company and its subsidiary share common employees is insufficient to impose liability on the part of the parent for acts of the subsidiary. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (internal quotations omitted); *see In re Alper Holdings*, 2008 WL 160203, at *5-6. Regarding the roles of common or overlapping employees, the United States Supreme Court in *United States v. Bestfoods* stated that "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," absent a situation where a common employee might "depart so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility." 524 U.S. at 69-71; *see also In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 588 (S.D.N.Y. 2007).

Like the Flake Plaintiffs before them, the Armstrong Plaintiffs have failed to allege any facts that would justify imposing liability on the part of Alper. Alper's ownership interest in Saltire came about merely as a result of a debt to equity swap in First City's then pending chapter 11 bankruptcy – and the Court will not make use of this incidental ownership interest to hold Alper indirectly liable for events that predated Alper's ownership interest in Saltire by nearly two decades. *See e.g., Da Silva v. Kinsho Intern. Corp.*, 210 F. Supp. 2d 241, 244 (S.D.N.Y. 2000) ("This Court agrees that a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation."). Most notably, as Alper suggests in its reply, even if all of the allegations

- 6 -

Case 1:07-cv-09348-CM Document 174 Filed 02/26/2008 Page 8 of 13

regarding Mr. Bauer and Alper are taken as true, the conduct alleged still falls well short of the "depart[ing] so far from the norms of parental influence" standard set forth by the Supreme Court in *Bestfoods* as the Armstrong Plaintiffs have failed to allege any acts by Mr. Bauer that would overcome the legal presumption that he was acting on behalf of Alper and not Saltire.

Accordingly, as the conduct alleged is insufficient to overcome the legal presumption that Mr. Bauer was acting on behalf of Saltire and not Alper, the Court sees no reason to part ways with the reasoning and rationale previously set forth in the Flake Opinion.  *See, e.g., In re Manhattan Invest. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) ("The law of the case is a discretionary doctrine, providing 'that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  While the law of the case is "a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided," nevertheless, the situations justifying reconsideration are generally limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal citations omitted); *641 Ave. of Americas Ltd. Partnership v. 641 Associates, Ltd.*, 189 B.R. 583, 588 (S.D.N.Y. 1995) ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.").  The Court finds no basis to impose a duty on the part of Alper – direct, indirect, assumed or otherwise – and therefore, the Armstrong Claims are disallowed.

## THE HOLT CLAIMS

Similar to the Armstrong Claims and the Flake Claims before them, the Holt Claims, which are based upon a separate complaint filed on or about December 3, 2003 (the "Holt Complaint"), assert various claims for both personal and property damage based upon, *inter alia*, Saltire's negligent contamination at the Dickson Plant and surrounding area.  Unlike the

- 7 -

Armstrong Plaintiffs, however, the Holt Plaintiffs allege damages based entirely upon injuries caused by the original contamination in Dickson County and not by any subsequent remediation or negligence.  Accordingly, the Holt Plaintiffs' allegations as they pertain to Alper are based entirely on a theory of alter ego liability.  In particular, the Holt Plaintiffs assert that Alper is liable as the alter ego of Saltire because (a) Alper was not merely an indirect or incidental parent of Saltire as had been previously contended, but rather was formed for the sole purpose of acquiring First City during its then pending chapter 11 proceeding, (b) Alper dominated and controlled the management and direction of Saltire to a much greater extent than previously suggested, and (c) Alper and First City diverted assets away from Saltire, which left Saltire grossly undercapitalized and eventually necessitated Saltire filing for bankruptcy protection under chapter 11 of the Bankruptcy Code in August 2004.[6]

Alper objects to the Holt Plaintiffs' alter ego and successor liability claims charging that such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released under the Saltire Plan and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.

In response, the Holt Plaintiffs contend that their alter ego claims against Alper were not property of the estate but rather were nondebtor third party claims that Saltire was unable to release under the Saltire Plan because *inter alia* (a) Tennessee law and not Delaware should control the analysis of alter ego claims and under Tennessee law, a debtor does not have the ability to pierce its own corporate veil, and (b) the claims asserted by the Holt Plaintiffs in the

---

[6]     *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

17584135\V-1

Holt Complaint are personal to the Holt Plaintiffs and could not have been brought by any

creditor of Alper.

As previously set forth in the Flake Opinion, courts are very reluctant to disregard the

corporate form.[7] *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 233

F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and

its subsidiary are not readily disregarded, except in rare circumstances justifying the application

of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v.*

*Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court

will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260,

270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the

corporate form, the party who wishes the court to disregard that form 'bears the burden of

proving that there are substantial reasons for doing so.'").  Under Delaware law, a corporate veil

will not be pierced absent a showing of "fraud or something like it."  *Mobile Oil Corp.*, 718 F.

Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o

pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a

sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted).

Under Delaware law, an alter ego cause of action constitutes a corporate right.  *See, e.g.*,

*In re Enron Corp.*, 2003 WL 1889040, at *3 ("Based on the fact that Delaware law allows a

---

[7]     While the Holt Plaintiffs suggest otherwise, it is clear under New York law that the law
of the state of incorporation controls the analysis of alter ego claims and, accordingly,
Delaware law controls our analysis.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d
Cir. 1995) ("[Under New York choice of law principles, the law of the state of
incorporation determines when the corporate form will be disregarded and liability will
be imposed on shareholders.") (internal quotations omitted); *Kalb v. Voorhis & Co. v.*
*Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of
state law whose primary purpose is to insulate shareholders from legal liability, the state
of incorporation has the greater interest in determining when and if that insulation is to be
stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at
*3 (Bankr. S.D.N.Y. Apr. 17, 2003).

subsidiary to maintain an action against a corporate parent, a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil"); *Pereira v. Cogan*, 00-CIV-619, 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001) ("It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporation fiction, or an involuntary tort creditor. However piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors..... [Therefore] it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.") *citing Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n. 20 (3d Cir. 1994); *Murray v. Miner*, 876 F. Supp. 512, 516 -17 (S.D.N.Y. 1995) ("One can only conclude that for purposes of applying federal bankruptcy law, Delaware courts would permit a debtor corporation to 'assert[ ] an alter ego claim to pierce its own corporate veil....'") (internal citations omitted). The law permits a debtor to pierce its own corporate veil because "[a]llowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis." *In re Enron Corp.*, 2003 WL 1889040, at *4.  As the Second Circuit stated in *Kalb, Voorhis & Co. v. American Fin. Corporation*, 8 F.3d 130 (2d Cir. 1993):

> [G]ranting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly; the alter ego action is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.

*Id*. at 132.

"Where a claim is generalized, with no particularized injury stemming from it and where the claim may be brought by any creditor, the trustee or debtor-in-possession is the appropriate

- 10 -

party to assert the claim and creditors are subject to the outcome of the action brought by the

trustee or debtor-in-possession." *In re Enron Corp.*, 2003 WL 1889040, at *4; *see also Murray*

*v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995) (An alter ego claim "belongs to the trustee if

(1) under governing state law the debtor could have asserted an alter ego claim to pierce its own

corporate veil, and (2) plaintiffs' claim is a general one, of the type that could be brought by any

creditor of the debtor.").

      While the Holt Plaintiffs have further expounded upon the successor liability and alter

ego theories previously dispensed with in the Flake Opinion,[8] the Court is not persuaded.

Among other things, the Holt Plaintiffs assert that (a) Alper and Saltire operated as a single

economic unit maintaining the same office space and over lapping employees, and (b) Alper and

First City diverted assets away from Saltire and sold of many of Saltire's most profitable

businesses, leaving it grossly undercapitalized and forcing Saltire to file for bankruptcy. Clearly,

claims of gross undercapitalization and fraudulent transfer such as those averred in the Holt

Complaint are of a generalized nature and do not allege a "particularized injury" specific to the

Holt Plaintiffs only and not Saltire's body of creditors at large. While this Court previously did

not address whether Saltire's alter ego claims were property of the estate, *see In re Alper*

*Holdings*, 2008 WL 160203, at * 6, it is clear based upon the conduct presently alleged that such

alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those

alter ego claims were released under section 13.1 of the Saltire Plan.[9] Accordingly, the Holt

Claims are disallowed.

---

[8]     The same, however, cannot be said of the Armstrong Plaintiffs, where counsel for the
Armstrong Plaintiffs – who previously served as counsel for the Flake Plaintiffs –
essentially restated the very same arguments dismissed by the Court in the Flake Opinion.

[9]     Section 13.1(b) of the Saltire Plan states, in pertinent part:

17584135\V-1

Case 1:08-cv-02844-CM Document 17-4 Filed 02/25/2008 Page 13 of 13

## CONCLUSION

For the reasons set forth above and at the hearing, and for the reasons set forth in the Flake Opinion, the Court finds that Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Claims are disallowed and expunged.

IT IS SO ORDERED.

Dated: New York, New York
       February 25, 2008

_/s/ Burton R. Lifland_____
The Honorable Burton R. Lifland
United States Bankruptcy Judge

---

The Debtor . . . acquits and forever discharges Alper . . . from any and all actions, causes of action, [and] liabilities . . . in any way relating to the Debtor . . . that the Debtor could assert directly or any Holder of a Claim . . . could assert derivatively or on behalf of the Debtor or its estate . . . . Notwithstanding the foregoing, the above release does not release claims any nondebtor third party may hold against any of the Released Parties, except to the extent any nondebtor third party is asserting a claim that is property of the Debtor's Estate.

- 12 -

17584135\V-1

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

Chapter:   11

In re:

ALPER HOLDINGS USA, et al.

Debtors.

Case No.:   07-12148 (BRL)
Jointly Administered

## MEMORANDUM DECISION AND ORDER GRANTING
## OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS
## OF CLAIM (CLAIM NOS. 20 AND 21) FILED BY FLAKE PLAINTIFFS

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and

expunging (the "Objection") claim numbers 20 and 21 (the "Flake Claims") filed by Cathy and

Ray Flake (together, the "Flake Plaintiffs"), pursuant to section 502 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").  The Flake Plaintiffs oppose the Objection asserting that the

Flake Claims have been sufficiently pled in their corresponding proofs of claim to put Alper on

notice of the claims filed against it.  For the reasons set forth below and at oral argument, the

Court finds Alper cannot be held liable, directly or indirectly, for claims arising out of or relating

to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County,

Tennessee.  Therefore, the Flake Claims are disallowed.

## **BACKGROUND**

### **History of Alper and Saltire**

The Flake Claims arise in connection with groundwater contamination and environmental

problems that arose in the mid-1980's in Dickson County, Tennessee, that were allegedly caused,

in part, by Saltire.  From approximately 1964 until March 1985, Saltire operated a plant in

Dickson County (the "Dickson Plant") where it made automotive tire valves and associated

products and where Trichloroethyleme ("TCE") was used as a degreaser.  The Dickson Plant

ceased operations in March 1985.  *See* Objection, at ¶12.

The existence of potential environmental problems including contamination of groundwater in Dickson County has been widely known since at least the mid-1980s. From 1985 through August 2004, Saltire worked under the auspices of state and federal environmental regulatory authorities in a multi-million dollar investigation and remediation of environmental contamination at the Dickson Plant site. *See Id.*, at ¶¶ 12-13. Despite the well-publicized contamination, in 2002, the Flake Plaintiffs purchased property within 8 miles of the Dickson Plant for use as a *water bottling facility*. *Id.* at ¶ 19 (emphasis supplied).

In 1992, <u>seven years</u> after the Dickson Plant closed and <u>decades</u> after the alleged disposal of industrial wastes in Dickson County first occurred, Alper became the controlling shareholder of an entity known as First City Industries Inc. ("First City") (an incidental and indirect parent of Saltire, through First City's then-pending chapter 11 case).[1] Although Alper ultimately became the direct parent of Saltire, Alper had no relationship with Saltire during the period the Dickson Plant was operating and during the period Saltire allegedly disposed of industrial waste in Dickson County.[2] As an incidental parent holding company of Saltire, Alper did not become a

---

[1]  As a creditor of First City, Alper received shares of stock as a stock for debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing (the "Hearing"), at 25-26.

[2]  Since 2003, numerous parties have filed lawsuits against Alper, among others, for alleged personal injury and property damage claims related to the environmental contamination in Dickson, Tennessee (collectively, the "Tennessee Actions"). The Tennessee Actions include three actions known as the "Dickson Actions": (1) Flake v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc. f/k/a Schrader Automotive, Inc.; Alper Holdings USA, Inc.; Tomkins PLC; the City; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Flake Action"), which forms the basis of the Flake Claims; (2) Armstrong v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc f/k/a Schrader Automotive, Inc.; Alper Holdings U.S.A., Inc.; Tomkins PLC; ArvinMeritor, Inc.; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Armstrong Action"); and (3) Adkins v. Schrader-Bridgeport International, Inc.; Alper Holdings USA, Inc.; ArvinMeritor, Inc; the City; the County; William Andrews; Lewis Kilmarx and John Does (the "Adkins Action" and collectively with the Armstrong Action and the Flake Action, the "Dickson Actions"). The other Tennessee Actions are: (1) Harry Holt, et al. v. Scovill, Inc., n/k/a Saltire Industrial, Inc.,

successor in interest to Saltire. *See Id.* at ¶ 13. On August 17, 2004, in part to deal with

liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in this Court

under chapter 11 of the Bankruptcy Code.[3]

On or about March 7, 2007, plaintiffs in the Dickson Actions, including the Flake

Plaintiffs, settled with Saltire for the aggregate amount of $1.5 million. In addition, on or about

October 13, 2006, the Flake Plaintiffs entered into a settlement and release agreement with two

of the other defendants to the Flake Action, the City of Dickson, Tennessee (the "City") and the

County of Dickson, Tennessee (the "County"), whereby the Dickson Plaintiffs agreed to release

the City and County – the entities that owned and operated the Dickson Landfill – from their

claim in return for, among other things, 75% of any recoveries that the City and County received

from Saltire.[4] *See Id.*, at ¶¶ 14-15.

**Alper Chapter 11 Case and
the Flake Claims**

On July 13, 2007, Alper filed for relief under chapter 11 of the Bankruptcy Code. On or about

September 19, 2007, the Flake Plaintiffs filed the "contingent, unliquidated, and disputed" Flake

Claims asserting *See Id.*, at ¶ 9. The fourth amended complaint (the "Complaint") filed by the

Flake Plaintiffs in the Flake Action accompanied each of the Flake Claims.[5] Among other

---

Alper Holdings USA, Inc., Ebbtide Corporation and the City and County of Dickson, Tennessee (the "Holt Action"); (2) Lavenia Holt, et al. v. Scovill, Inc. et al (the "Lavenia Holt Action"); and (3) Dunbar v. Saltire Industrial, f/k/a Scovill, Inc. et al., pending in the Circuit Court of Dickson County, Tennessee (the "Dunbar Action").

[3]    *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

[4]    The City dropped its claim against Saltire, and the Flake Plaintiffs effectively received no recovery from the City. The County's claim against Saltire continues to be litigated, but Alper asserts that the Flake Plaintiffs' share of any recovery the County receives from Saltire will be de minimis.

[5]    In addition to the Complaint, the Flake Plaintiffs included the following paragraph in the supporting documents attached to the Flake Claims:

things, the Complaint, which the Flake Plaintiffs relied upon entirely to support their claims, alleged that the Flake Plaintiffs suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or monitor the disposal of the TCE at all locations throughout Dickson."  *See* Complaint, at ¶¶ 31-36.  However, nowhere in their Complaint do the Flake Plaintiffs allege specific negligent acts or causes of action against Alper; rather, they rely on six broadly pled causes of action asserted generally against the "defendants."  *See Id.*, at ¶¶ 37-71.

On November 14, 2007, Alper filed the Objection alleging that the Flake Claims were both baseless and facially deficient based on the following: (a) Alper had no connection or relationship to Dickson County or the Dickson Plant before it became the indirect controlling shareholder of Saltire in 1992 – at least two decades after any alleged contamination first occurred and at least seven years after the Dickson plant closed; (b) by their own admission, the Flake Plaintiffs did not perform any investigation or due diligence with respect to the water quality and contamination, which had been widely reported beginning in the mid-1980's; and (c) to the extent that the Flake Plaintiffs were attempting to assert claims against Alper on a theory that Alper was the alter ego of Saltire, such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released pursuant to Saltire's plan of reorganization (the "Saltire Plan") and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson

---

Creditor's property and personal damage claim arises from contamination by hazardous waste including Trichloroethyleme ("TCE"), and industrial solvent used at a manufacturing facility in Dickson, Tennessee and is based on the independent acts and/or omissions of Alper Holdings, USA, Inc. in connection with said contamination.

*See* Supporting Document Attachment to Flake Claims.

Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.  *See* Objection, at ¶¶ 16-21.

On December 27, 2007, the Flake Plaintiffs responded to the Objection (the "Response") claiming that the Flake Claims should not be dismissed because *inter alia* (a) the Flake Plaintiffs' proofs of claim contained sufficient allegations to support their claims against Alper, and (b) the Flake Plaintiffs' alter ego claims against Alper could not have been released by Saltire during Saltire's bankruptcy because the Flake Plaintiff's alter ego claims were not property of Saltire's bankruptcy estate.  *See* Response, at pp. 9-21.

## DISCUSSION

It is well settled that a proof of claim executed and filed in accordance with the Federal Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim.  *In re Musicland Holding Corp.*, 362 B.R. 644, 651-652 (Bankr. S.D.N.Y. 2007); *In re Castaldo*, No. 05-36349, 2006 WL 3531459, *3 (Bankr. S.D.N.Y. Dec. 7, 2006).  The filing of a proof of claim, however, is only the beginning of the Court's inquiry.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is *"prima facie"* valid .... [and] the ... burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, *15 (Bankr. S.D.N.Y. Aug. 22, 2007)

(citing *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)); *In re Lehning*, No. 05-

16245, 2007 WL 1200820, *3 (Bankr. N.D.N.Y  Apr. 20, 2007); *In re MarketXT Holdings Corp.*, No. 04-12078, 2007 WL 680763, *4 (Bankr. S.D.N.Y. Mar. 1, 2007).  The Court finds as a matter of law that the Flake Plaintiffs have failed to meet this burden.

In the Response, the Flake Plaintiffs contend that either (a) Alper is directly liable to the Flake Plaintiffs for negligently causing damage to their persons and/or property, or in the alternative that (b) Alper is indirectly liable as a successor or alter ego of Saltire for negligently causing damage to their persons and/or property.  The Courts finds, however, that as a matter of law, Alper had no connection with the original contamination that occurred in Dickson County or Saltire's efforts to remedy that contamination and, therefore, Alper is not liable for damages stemming from those actions.

## Alper Has No Direct Liability to the Flake Plaintiffs

To establish a direct cause of action against Alper, the Flake Plaintiffs must prove that Alper owed a duty to the Flake Plaintiffs, that the duty was breached, and that the breach was the cause in fact and proximate cause of the Flake Plaintiffs' injury or loss.  *See Ham v. Hospital of Morristown, Inc*., 917 F. Supp. 531, 534 (E.D. Tenn. 1995) ("The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff.").  The alleged disposal of industrial waste and TCE in Dickson County occurred during the 1960s and 1970s, and Saltire ceased all operations and closed the Dickson Plant in March 1985.  Alper, however, had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed.  *See* Objection, at ¶¶ 16-17.

Rather than set forth any specific factual allegations with respect to Alper, the Flake Plaintiffs attempt to hide behind a generic complaint directed at 21 different defendants without

alleging any specific liability to the Flake Plaintiffs owed on the part of Alper.  Such generic,

flypaper pleadings will not suffice.  *Robbins v. Cloutier*, 121 Fed. Appx. 423, 425 (2d Cir. 2005)

("[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed; [d]iffuse and expansive allegations are insufficient, unless amplified by specific

instances of misconduct."); *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y.

2007) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002)); *C.f. Apace

Communications, Ltd. v. Burke*, 07-CV-6151L, 2007 WL 4125232, *6 (W.D.N.Y. Nov. 16,

2007) (citing *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990)) ("A complaint that attributes

misrepresentations to all defendants, lumped together for pleading purposes, generally is

insufficient"); *Ballew v. Black*, 06-CV-70-HRW, 2006 WL 3193379, *4 (E.D. Ky. Nov. 1,

2006) ("When a complaint (such as the one filed in this case) merely lists multiple defendants

and then describes at length the facts generally without naming the specific defendants involved

in each event, and without setting forth with particularity which acts by each defendant caused

each constitutional deprivation, the complaint is insufficient.").

Even if the Flake Plaintiffs had alleged specific liability on the part of Alper, it was

Saltire, not Alper, who operated the manufacturing facility in Dickson County.  "As a general

rule, under Tennessee law, persons do not have a duty to control the conduct of other persons to

prevent them from causing harm to others."  *McConkey v. McGhan Med. Corp.*, 144 F. Supp.

958 (E.D. Tenn. 2000); *Cooley v. Unique Vacations, Inc.*, Civ. A. 04-141-KSF, 2005 WL

2757249, *2 (E.D. Ky. Oct. 25, 2005) ("As a general rule, an actor whose own conduct has not

created a risk of harm has no duty to control the conduct of a third person to prevent him from

causing harm to another."); *Ham*, 917 F. Supp. at 534 ("In Tennessee, while all persons have a

duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others,

they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own. Thus, as a general rule in Tennessee, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others.") (internal citations omitted). The only connection that the Flake Plaintiffs have been able to point to between Alper and Saltire's remediation efforts in Dickson County was (i) a management agreement (the "Management Agreement") entered into between Saltire and Alper in 1995 whereby Alper agreed to oversee certain environmental matters and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs assert was involved in the clean-up efforts in Dickson County. As more thoroughly set forth below, the existence of the Management Agreement and a common employee are insufficient to impose even indirect liable on Alper. Accordingly, as it was Saltire and not Alper who operated the Dickson Plant and presumably contaminated the groundwater in Dickson County, Alper owed no duty to the Flake Plaintiffs.

At the Hearing, the Flake Plaintiffs argued, in the alternative, that Alper assumed a duty to the Flake Plaintiffs by voluntarily undertaking to oversee or control Saltire's remediation efforts in Dickson County. *See* Transcript, at pp. 22-31. Under Tennessee law, "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all…." *Nidiffer v. Clinchfield R.R. Co.,* 600 S.W.2d 242, 246 (Tenn. App. 1980) (citing *Glanzer v. Shepard,* 233 N.Y. 236 (1922)). To prevail, however, on a claim under the so-called "Good Samaritan" rule, one must demonstrate reliance on the undertaking to the detriment of the plaintiff.[6] *See Lemar v. U.S.*, 580 F. Supp. 37, 40 (D. Tenn. 1984) ("The

---

[6]     In Tennessee, the "Good Samaritan" rule is embodied in Section 324A of the Restatements, which provides:

>     One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

essential element for recovery under § 324A and the 'Good Samaritan' rule is reliance."). The Flake Plaintiffs, however, have set forth no facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County to support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *See* Transcript of Hearing, at p. 36. Moreover, a fundamental premise of the Flake Plaintiffs' claim is that they were unaware of environmental contamination and subsequent remediation in Dickson County. As the Flake Plaintiffs were allegedly unaware of any contamination or remediation efforts, they could not, simultaneously, have relied on Alper's alleged control of that remediation. *See, e.g., Howell v. U.S.*, 932 F.2d 915, 919 (11th Cir. 1991) ("To establish 'good samaritan' liability, therefore, appellants must show reliance… the required reliance must be actual though not necessarily specific…at a minimum, [this] requires knowledge that the allegedly negligent inspection occurred before reliance can be found and 'good samaritan' liability can attach."); *see also* Transcript of Hearing, at 28-29. Accordingly, Alper did not assume a duty of care to the Flake Plaintiffs.

**<u>Alper Has No Indirect Liability to the Flake Plaintiffs</u>**

The Flake Plaintiffs argue, in the alternative, that Alper was indirectly liable for the negligent acts or omissions of Saltire in its remediation efforts on a theory of alter ego or piercing the corporate veil. Response, at p. 17. As noted above, to support their alter ego

---

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

claims, the Flake Plaintiffs point to the existence of (i) the Management Agreement between Alper and Saltire, which provided, *inter alia*, that Alper would oversee certain environmental remediation for Saltire, and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs contend was involved in the clean-up activities in Dickson County. *See* Reply of Alper Holdings USA, Inc. to Response of Ray and Cathy Flake to Objection Filed by Alper Holdings USA, Inc. to Proofs of Claim Nos. 20 and 21, at ¶¶ 8-11.

Courts are very reluctant to disregard the corporate form.[7] *See Power Integrations, Inc. v. Fairchild Semiconductor Intern.*, Inc., 233 F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form 'bears the burden of proving that there are substantial reasons for doing so.'"). Under Delaware law, a corporate veil will not be pierced absent a showing of "fraud or something like it." *Mobile Oil Corp.*, 718 F. Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted). Moreover, as set forth by the Supreme Court in *United States v. Bestfoods*:

---

[7] Under New York law, the law of the state of incorporation controls the analysis of alter ego claims. *See Kalb v. Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003).

> It is a general principle of corporate law deeply "ingrained in our
> economic and legal systems" that a parent corporation (so-called
> because of control through ownership of another corporation's
> stock) is not liable for the acts of its subsidiaries. Thus it is
> hornbook law that "the exercise of the 'control' which stock
> ownership gives to the stockholders ... will not create liability
> beyond the assets of the subsidiary. That 'control' includes the
> election of directors, the making of by-laws ... and the doing of all
> other acts incident to the legal status of stockholders. Nor will a
> duplication of some or all of the directors or executive officers be
> fatal." Although this respect for corporate distinctions when the
> subsidiary is a polluter has been severely criticized in the literature,
> nothing in CERCLA purports to reject this bedrock principle, and
> against this venerable common-law backdrop, the congressional
> silence is audible.

524 U.S. 51, 61-62 (1998) (internal citations omitted*); See also Velez v. Novartis Pharmaceuticals Corp.*, 244 F.R.D. 243, 254 (S.D.N.Y. 2007) ("A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability."); *In re King*, 305 B.R. 152, 166 (Bankr. S.D.N.Y. 2004) (citing 18 Am. Jur.2d *Corporations* § 57 (2003)) (the fact that a corporation owns all or the majority of the stock of another "does not in itself destroy the identity of the latter as a distinct legal entity...and the fact that stockholders, officers or directors in two corporations may be the same persons does not operate to destroy the legal identify of either corporation**….**").

Clearly, special circumstances do not exist here that would justify the extraordinary remedy of piercing the corporate veil. The Flake Plaintiffs have not alleged fraud or "something like it" on the part of Alper, which would be necessary to impose indirect liability. The fact that Saltire and Alper had a common employee is insufficient to hold Alper liable for Saltire's alleged contamination or remediation. *See Bestfoods*, 524 U.S. at 61-62; *Velez*, 244 F.R.D. at 254; *In re King*, 305 B.R. at 166. While the Flake Plaintiffs point to certain deposition excerpts to support their contention that the employee in question, Nicholas Bauer, was an employee of

Alper only, it is clear from the record that not only was Mr. Bauer an officer of Saltire, specifically vice president of environmental affairs, *see* Transcript of Hearing, at 30, but that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County. *Bestfoods*, 524 U.S. at 69 ("[C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary,...") (internal quotations omitted). Similarly, the mere existence of the Management Agreement alone is also insufficient to impose such liability where the Flake Plaintiffs have not alleged any facts to support their claim that Alper participated (negligently or otherwise) in the remediation. *United States v. Newmont, Ltd.*, No. CV-05-020-JLQ, 2007 WL 2405040 (E.D. Wash. Aug. 17, 2007). Regardless of whether the Flake Plaintiffs' alter ego claims were released under Saltire's plan of reorganization as Alper contends, the Court finds that no such claims may be asserted against Alper as a matter of law.

## CONCLUSION

For the reasons set forth above and at the hearing, the Court finds that Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Flake Claims are disallowed and expunged.

It is so ordered.

Dated: New York, New York
January 15, 2008

         /s/ Burton R. Lifland
        The Honorable Burton R. Lifland
        United States Bankruptcy Judge

Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

ALPER HOLDINGS USA, et al.

Debtors.

FOR PUBLICATION

Chapter:   11

Case No.:  07-12148 (BRL)
           Jointly Administered

## MEMORANDUM DECISION AND ORDER ON OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM (CLAIM NOS. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) FILED BY THE ADKINS CLAIMANTS

Before the Court is the objection (the "Adkins Objection") of Alper Holdings USA, Inc.

("Alper" or the "Debtor") to certain claims (the "Adkins Claims") filed by the Adkins

Claimants[1], pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Adkins Claimants oppose the Adkins Objection asserting that their claims have been

sufficiently pled to put Alper on notice.  For the reasons set forth below and in accordance with

this Court's previous Memorandum Decision on Objection of Alper to Proofs of Claim (Claim

Nos. 29 and 21) filed by Flake Plaintiffs dated January 15, 2008 (the "Flake Opinion") and

---

[1]     The Adkins Claimants include Donald Adkins, Kristi Adkins, Hunter Adkins, Chad
        Beard, Patricia Beard, Emily Beard, Eric Christian, Peyton Christian, Jennifer Casteel,
        Timothy DeLoach, Kimberly DeLoach, Paxton DeLoach, Anthony Fambrough, Keysha
        Fambrough, Autumn Fambrough, Shonda Heflin, John Christopher Stiver, Sydney Stiver,
        David Heimbach, Jodie Heimbach, Kassidy Heimbach, Dawson Heimbach, Mason
        Heimbach, Scott Herkimer, Darcie Herkimer, Samuel Herkimer, Steven Jones, Melissa
        Jones, Mya Jones, Barry Piland, Christie Piland, Luke Piland, Travis Wood, Amy Wood
        and Lauren Wood (collectively, the "Adkins Plaintiffs") as well as Priscilla Fowler and
        Jason Stewart -- who together filed proof of claim number 17 -- and James Dakota
        Stewart, Charity Comeaux, and Joshua Campbell -- who together filed proof of claim 27
        (collectively, the "Non-Plaintiff Adkins Claimants" and, together with the Adkins
        Plaintiffs, the "Adkins Claimants").  The Non-Plaintiff Adkins Claimants are represented
        by the same counsel, and have filed substantially identical proofs of claim for personal
        injury/wrongful death claims, as the Adkins Plaintiffs. On information and belief, the
        Non-Plaintiff Adkins Claimants are asserting substantially similar claims as those
        asserted by the Adkins Plaintiffs and, accordingly, this Objection addresses the claims of
        all of the Adkins Claimants.

Memorandum Decision on Objection of Alper to Proofs of Claim Filed by (i) the Armstrong

Plaintiffs and (ii) Holt Plaintiffs dated February 28, 2008 (the "Holt/Armstrong Opinion"),[2] this

Court *once again* finds Alper cannot be held liable, directly or indirectly, for claims arising out

of or relating to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in

Dickson County, Tennessee.  Therefore, the Adkins Claims are disallowed.

## BACKGROUND

The Adkins Objection is the latest installment in a series of omnibus claims objections

concerning claims based upon groundwater contamination that occurred in Dickson County,

Tennessee in the mid-1960's allegedly caused, in part, by Saltire (an indirect and incidental

subsidiary of Alper).  Having previously discussed the facts and circumstances preceding Alper's

bankruptcy at length not once, but twice, in both the Flake Opinion and the Holt/Armstrong

Opinion, the Court presumes all parties are familiar with the facts and generally refers all parties

to those opinions.  Briefly, the Adkins Claimants, like the Flakes, Holts and Armstrongs before

them, claim to have suffered personal injuries as a result of Saltire's alleged contamination.

From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the

"Dickson Plant") where it made automotive tire valves and associated products and where

trichloroethylene ("TCE") was used as a degreaser.  The Dickson Plant ceased operations in

March 1985.  Since filing for bankruptcy on July 13, 2007, numerous parties have filed claims

against Alper based on, among other things, Saltire's alleged contamination in Dickson County.

---

[2]     The parties stipulated at oral argument that in lieu of holding additional argument on the
Adkins Claims, the parties would rely on the presentations made in connection with the
hearing held on Alper's objection to the claims of the Armstrong Plaintiffs (as defined
below), which the parties mutually agreed consisted of substantially similar legal
arguments to those presently at issue.

17584135\V-1

**The Flake Opinion**

On January 15, 2008, this Court issued the aforementioned Flake Opinion, which granted Alper's objection to certain claims asserted by Cathy and Ray Flake (together, the "Flake Plaintiffs") for personal and property damages based upon the alleged contamination in Dickson County.[3] *In re Alper Holdings USA*, 07-12148 (BRL), 2008 WL 160203 (Bankr. S.D.N.Y. Jan. 15, 2008). In that instance, the Flake Plaintiffs claimed (the "Flake Claims") to have suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or maintain the disposal of the TCE at all locations throughout Dickson." As is presently the case, the Flake Plaintiffs alleged theories of both direct and indirect liability against Alper.

This Court granted Alper's objection and disallowed the Flake Claims based in large part upon the facts that (i) Alper's ownership interest in Saltire was not only indirect but also incidental as Alper only became the controlling shareholder of Saltire in connection with the reorganization of Saltire's parent First City Industries, Inc.[4] ("First City") and (ii) Alper had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed. Specifically, this Court found that Alper had no direct liability to the Flake Plaintiffs because (a) it was Saltire and not Alper that operated the Dickson Plant and, therefore, Alper owed no duty of care to the Flake Plaintiffs, and (b) the Flake Plaintiffs failed to set forth any facts that Alper actually participated in or oversaw

---

[3]     Curiously, despite the well-publicized contamination in Dickson County, the Flake Plaintiffs purchased property within 8 miles of the Dickson Plant in 2002 for use as a *water bottling facility*.

[4]     As a creditor of First City, Alper received shares of stock as a stock-for-debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing, at 25-26.

Saltire's remediation in Dickson County that would support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *Id.* at *4-5.

This Court also found that Alper had no indirect liability to the Flake Plaintiffs on either a theory of alter ego or piercing the corporate veil because neither the existence of a management agreement (the "Management Agreement") entered into between Saltire and Alper in 1995 whereby Alper agreed to oversee certain environmental issues nor a common employee between the parent and subsidiary would justify the extraordinary remedy of piercing the corporate veil as argued by the Flake Plaintiffs. *Id.* at *5-6. In so holding, the Court clearly held that "Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee." *Id.* at *7.

**The Holt/Armstrong Opinion**

Despite the clear and unambiguous holding set forth in the Flake Opinion, this Court was compelled to issue another decision on claims stemming out of the Dickson County contamination on February 25, 2008.[5] In the Holt/Armstrong Opinion, *In re Alper Holdings USA*, 07-12148 (BRL), 2008 WL 541154 (Bankr. S.D.N.Y. Feb. 25, 2008), the Court was presented with two separate groups of claimholders, the Armstrong Plaintiffs[6] and the Holt Plaintiffs[7], both of whom sought to impose liability on Alper for both personal and property damages but under different theories of liability.

---

[5] With the exception of the Holt Plaintiffs, the same law firm has represented each of the separate plaintiff groups.

[6] The Armstrong Plaintiffs include Charlotte Armstrong and Jon Armstrong (together, the "Armstrong Plaintiffs").

[7] The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt, Sheila Holt-Orsted, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Holt Plaintiffs").

- 4 -

## A. The Armstrong Plaintiffs – Assumption of Duty Theory of Liability

In their amended pleadings,[8] the Armstrong Plaintiffs sought to build upon the theory first introduced by the Flake Plaintiffs that Alper controlled the environmental remediation efforts in Dickson County (and assumed a duty to the Armstrong Plaintiffs) by further alleging that Nicholas Bauer, the same common employee of Saltire and Alper previously discussed in the Flake Opinion, oversaw the remediation on behalf of Alper.[9]  More precisely, the Armstrong Plaintiffs alleged that Mr. Bauer: (a) considered himself an employee of Alper and not Saltire, (b) was hired by Alper for the sole purpose of overseeing the remediation in Dickson County, (c) represented himself as an Alper official who had responsibility for environmental matters at Saltire, and (d) operated from an office in Virginia, a jurisdiction where only Alper and not Saltire was authorized to do business.  Like the Flake Plaintiffs before them, the Armstrong Plaintiffs also pointed to the existence of the Management Agreement as proof that Alper had assumed control of the Dickson County remediation.

Alper objected to the Armstrong Plaintiffs' claims arguing that they were fundamentally the same negligent remediation claims the Court previously dispensed with in the Flake Opinion.  Additionally, Alper contended that any claims for alter ego or successor liability should be

---

[8]     Apparently recognizing that their claims as originally filed (which only set forth damages stemming from the original contamination) would ultimately fail in light of the Flake Opinion, the Armstrong Plaintiffs' subsequently attempted to amend their proofs of claim to include allegations that Alper voluntarily assumed Saltire's remediation efforts in Dickson County and that Alper was negligent in conducting that remediation.

[9]     The Flake Plaintiffs previously alleged that Mr. Bauer was not an employee of Saltire at all, but rather was hired solely by Alper to deal with the remediation in Dickson County. The Court, however, previously held that not only was Mr. Bauer clearly an employee of Saltire (specifically, vice president of environmental affairs), but also that that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County.  *In re Alper Holdings,* 2008 WL 160203, at *6.

disallowed because such claims were property of Saltire's bankruptcy estate and were released under Saltire's plan of reorganization (the "Saltire Plan").

In contrast, the Armstrong Plaintiffs argued that their claims should not be dismissed because, *inter alia*, (a) the Armstrong Plaintiffs' proofs of claim contained sufficient allegations to survive what they contend was a motion to dismiss, and (b) the Armstrong Plaintiffs' alter ego claims against Alper could not have been released under the Saltire Plan because their claims were not property of the estate.

This Court held that the Armstrong Plaintiffs, like the Flake Plaintiffs before them, had failed to allege any facts that would justify imposing liability on the part of Alper. Once again, this Court stressed that (a) the fact that a parent company (Alper) and its subsidiary (Saltire) shared common employees was insufficient to impose liability on the part of the parent for acts of the subsidiary; and (b) Alper's ownership interest in Saltire came about merely as a result of a debt to equity swap in First City's then pending chapter 11 bankruptcy – and the Court would not make use of such an incidental ownership interest to hold Alper indirectly liable for events that predated Alper's ownership interest in Saltire by nearly two decades. *In re Alper Holdings*, 2008 WL 541154, at *3-*4.

### B. The Holt Plaintiffs – Alter Ego Theory of Liability

In contrast to the assumption of duty theory pursued by the Flake and Armstrong Plaintiffs, the Holt Plaintiffs alleged personal injury damages based entirely upon injuries caused by the original contamination in Dickson County and not by any subsequent remediation or negligence. Accordingly, the Holt Plaintiffs' allegations as they pertained to Alper were based entirely on a theory of alter ego liability.[10]

---

[10]    In addition to the causes of action asserted against Alper, the Holt Plaintiffs also alleged various causes of action against the city and county of Dickson, the commissioner of the Tennessee Department of Environment and Conservation, and the commissioner of the

The Holt Plaintiffs claimed that Alper was liable as the alter ego of Saltire because (a) Alper was not merely an indirect or incidental parent of Saltire as had been previously contended, but rather was formed for the sole purpose of acquiring First City during its then pending chapter 11 proceeding, (b) Alper dominated and controlled the management and direction of Saltire to a much greater extent than previously suggested, and (c) Alper and First City diverted assets away from Saltire and sold of many of Saltire's most profitable businesses, which left Saltire grossly undercapitalized and eventually necessitated Saltire filing for bankruptcy protection under chapter 11 of the Bankruptcy Code in August 2004.[11]

Alper objected to the Holt Plaintiffs' alter ego and successor liability claims in the same fashion it had previously objected to similar claims by the Flake Plaintiffs charging that such claims should be disallowed because (i) any alter ego claims that Saltire may have had against Alper were property of the estate and were released under the Saltire Plan and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.

The Holt Plaintiffs argued that their alter ego claims were not property of the estate but rather were nondebtor third party claims that Saltire was unable to release under the Saltire Plan because, *inter alia*, (a) under Tennessee law (which the Holt Plaintiffs argued controlled the analysis of alter ego claims rather than Delaware, the state of incorporation), a debtor did not have the ability to pierce its own corporate veil, and (b) the claims asserted by the Holt Plaintiffs

---

Tennessee Department of Health for, among other things, battery, nuisance and numerous civil rights violations.

[11]     *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

17584135\V-1

were personal to the Holt Plaintiffs and could not have been brought by Alper's body of creditors at large.

Although the Court previously declined to address whether Saltire's alter ego claims were property of the estate in the Flake Opinion, *see In re Alper Holdings*, 2008 WL 160203, at * 6, it was clear based upon the conduct alleged by the Holt Plaintiffs that such alter ego claims were of a generalized nature and did not allege a "particularized injury" specific only to the Holt Plaintiffs.  Accordingly, this Court held that such alter ego claims were in fact property of Saltire's bankruptcy estate and were, therefore, released under section 13.1 of the Saltire Plan.[12] *In re Alper Holdings*, 2008 WL 541154, at *6.  As can be seem from the following, the prior holding regarding the Holt Plaintiffs' alter ego claims applies equally to the current Adkins Claimants.

---

[12]     Section 13.1(b) of the Saltire Plan states, in pertinent part:

> The Debtor . . . acquits and forever discharges Alper . . . from any and all actions, causes of action, [and] liabilities . . . in any way relating to the Debtor . . . that the Debtor could assert directly or any Holder of a Claim . . . could assert derivatively or on behalf of the Debtor or its estate . . . .  Notwithstanding the foregoing, the above release does not release claims any nondebtor third party may hold against any of the Released Parties, except to the extent any nondebtor third party is asserting a claim that is property of the Debtor's Estate.

17584135\V-1

Case 1:08-v-02848-CM Document 36 Filed 04/03/2008 Page 10 of 17

### THE ADKINS CLAIMS

On or about September 19, 2007, the Adkins Claimants filed their original proofs of claim asserting contingent, unliquidated, and disputed personal injury and wrongful death claims (the "Original Adkins Claims").  The Original Adkins Claims were based entirely upon a complaint (the "Adkins Complaint") filed by the Adkins Claimants on or about January 9, 2006 against Alper, asserting various claims for personal injuries based upon both direct and indirect theories of liability.  Before proceeding, the Court notes the following: (a) despite counsel for the Adkins Claimants' (the "Esserman Firm") repeated efforts at differentiating the physical injuries sustained by his clients, the personal injuries allegedly suffered by the Adkins Claimants are nearly identical in all respects to those previously before the Court; and (b) the Adkins Complaint is completely devoid of any allegations of negligent remediation on the part of Alper or claims that Alper assumed a duty of care to the Adkins Claimants.  In fact, except for the statements that Alper was liable for its "own direct acts and omission" and as a "successor-in-interest" to Saltire, the Adkins Complaint does not set forth a single specific allegation that would warrant imposing liability on the part of Alper.

On February 28, 2007, Alper filed the Adkins Objection alleging that the Original Adkins Claims were both baseless and facially deficient for all of the same reasons set forth in their previous claims objections, namely that: (a) Alper had no connection or relationship to Dickson County or the Dickson Plant prior to becoming Saltire's indirect and incidental parent and, therefore, Alper owed no duty of care to the Adkins Claimants; (b) the Adkins Claimants had made no showing aside from the general statement that Alper was being sued based on its "own direct acts and omission" that Alper had engaged in any negligent remediation efforts in Dickson County; and (c) to the extent that the Adkins Claimants were attempting to assert alter ego claims against Alper (like the Flakes, Holts and Armstrong Plaintiffs before them), such claims must be

disallowed because (i) the Court had previously ruled in the Holt/Armstrong Opinion that such claims were property of the estate and released under the Saltire Plan; and (ii) even if such claims were not released under the Saltire Plan, Alper did not exercise any dominion or control over Saltire's operations.

Following the previous dismissal of the Flake and Armstrong Claims as a matter of law, the Esserman Firm reacted on behalf of the Adkins Claimants by attempting to amend the Original Adkins Claims nearly one month after Alper filed the Adkins Objection (the "New Adkins Claims").[13]  In the New Adkins Claims and the Adkins Claimants' response to the Adkins Objection (the "Adkins Response"), the Esserman Firm attempts *once again* to resurrect the very same assumption of duty theory this Court previously put to rest in the Flake Opinion and the Holt/Armstrong Opinion.  Specifically, the Adkins Response states as follows:

> While the Debtor was not involved in the initial contamination in Dickson, the Debtor assumed control of the TCE remediation efforts after its acquisition of Saltire in 1992.  The Debtor conducted such remediation in a negligent manner by failing to properly contain the contamination and by allowing the ongoing migration of TCE contaminants to Dickson-area drinking water— thereby causing the Adkins Claimants' injuries.

*See* Adkins Response, at p. 2.

In addition to the assumption of duty theory (which by the Adkins Claimants own admission is their sole bases for imposing direct liability on Alper), the Adkins Claimants also contend – in direct contravention to this Court's holding in the Holt/Armstrong Opinion – that their alter ego claims against Alper were not property of Saltire's bankruptcy estate and could not be released under the Saltire Plan.

---

[13]  Alper has objected to the filing of the New Adkins Claims as an impermissible amendment to the Original Adkins Claims as they were filed nearly six months after the expiration of the September 21, 2007 bar date.  *See* Objection of Alper Holdings USA to Amendment of Proofs of Claim (Claim Nos. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) Filed by Adkins Claimants dated April 2, 2008, at ¶ 3.

It is clear from the pleadings before the Court that the Adkins Claimants intend to rely exclusively on the new allegations as set forth in the New Adkins Claims. In response, Alper argues in well grounded fashion that exclusive reliance on the New Adkins Claims is tantamount to a concession that the Original Adkins Claims were deficient as pled. Regardless, the New Adkins Claims may very well be impermissible amendments to the Original Adkins Claims because they are based on a set of facts and theories of legal liability completely different than those asserted in the Original Adkins Claims and there is no equitable reasons to permit the late-filed claims because the Adkins Claims "whether in the amended form or in [their] essential form still [do] not state a plausible, cognizable legal claim under the prevailing law." *See* Transcript of Hearing Regarding Alper Holdings USA, Inc.'s Objection to Claims of the Harry Holt Plaintiffs and the Armstrong Plaintiffs, dated February 21, 2007, at p. 17.

## DISCUSSION

### Alper Has No Direct Liability to the Adkins Claimants

To establish a direct cause of action against Alper, the Adkins Claimants must prove that Alper owed a duty to the Adkins Claimants, that the duty was breached, and that the breach was the cause in fact and proximate cause of the Adkins Claimants' injuries. *See Ham v. Hospital of Morristown, Inc.*, 917 F. Supp. 531, 534 (E.D. Tenn. 1995) ("The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff."). Recognizing that Alper had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant closed, the Adkins Claimants now rely solely on their theory that Alper controlled the remediation in Dickson County and assumed a duty of care to the Adkins Claimants to impose direct liability on Alper.

- 11 -

17584135\V-1

Under Tennessee law, the so-called "Good Samaritan" rule is embodied in Section 324A of the Restatements, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

It is on the second prong of this test – that Alper undertook to perform a duty of Saltire when it assumed control over the remediation in Dickson County – that the Adkins Claimants rest their hat.

In support of this theory, however, the Esserman Firm (who previously served both as counsel for the Flake Plaintiffs and the Armstrong Plaintiffs) does not offer a single shred of new evidentiary support. Indeed, the Adkins Claimants rely on the same arguments previously submitted by the Flake and Armstrong Plaintiffs which were reviewed and dispensed with by this Court, namely the mere existence of the Management Agreement and a common employee (Mr. Bauer) involved in the remediation. As previously discussed in the Flake Opinion and the Holt/Armstrong Opinion, however, these facts alone are insufficient to impose liability on Alper. *See In re Alper Holdings*, 2008 WL 160203, at *5-6; *In re Alper Holdings*, 2008 WL 541154, at *3.

The fact that a parent company and its subsidiary share common employees is insufficient to impose liability on the part of the parent for acts of the subsidiary. *See United States v.*

*Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (internal quotations omitted).  Courts generally presume overlapping directors are acting on behalf of the subsidiary and not the parent company when acting for the subsidiary absent extraordinary circumstances.  *Bestfoods*, 524 U.S. at 69-71.

Despite the fact that the Esserman Firm is now attempting this argument for the third time, the Court remains unpersuaded.  The Adkins Claimants have failed to provide any support either to rebut the legal presumption that Mr. Bauer was acting on behalf of Saltire and not Alper in overseeing the Dickson County remediation or to support their claim that Alper participated (negligently or otherwise) in the remediation.  Accordingly, the Court sees no reason to part ways with the rationale set forth in the Flake and Holt/Armstrong Opinions.  *See, e.g., In re Manhattan Invest. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) ("The law of the case is a discretionary doctrine, providing 'that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  While the law of the case is "a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided," nevertheless, the situations justifying reconsideration are generally limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal citations omitted); *641 Ave. of Americas Ltd. Partnership v. 641 Associates, Ltd.*, 189 B.R. 583, 588 (S.D.N.Y. 1995) ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.").

**Alper Has No Indirect Liability to the Adkins Claimants**

Despite this Court's prior opinions, the Adkins Claimants argue in the alternative that Alper is indirectly liable to the Adkins Claimants on the basis that Saltire was an alter ego of Alper during the negligent remediation of the Dickson Plant. The Court does not see any benefit in revisiting this issue again except to draw the Adkins Claimants'' attention to that portion of the Holt/Armstrong Opinion which states as follows:

> While this Court previously did not address whether Saltire's alter ego claims were property of the estate, *see In re Alper Holdings*, 2008 WL 160203, at * 6, it is clear based upon the conduct presently alleged that such alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those alter ego claims were released under section 13.1 of the Saltire Plan. Accordingly, the Holt Claims are disallowed.

*In re Alper Holdings*, 2008 WL 541154, at *4.

"Where a claim is generalized, with no particularized injury stemming from it and where the claim may be brought by any creditor, the trustee or debtor-in-possession is the appropriate party to assert the claim and creditors are subject to the outcome of the action brought by the trustee or debtor-in-possession." *In re Enron Corp.*, 2003 WL 1889040, at *4; *see also Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995) (An alter ego claim "belongs to the trustee if (1) under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, and (2) plaintiffs' claim is a general one, of the type that could be brought by any creditor of the debtor.").

Despite their contentions, the injuries asserted by the Adkins Claimants are not particularized or unique and could have properly been brought by Saltire or Saltire's general body of creditors. Accordingly, Alper has no indirect liability to the Adkins Claimants on a theory of alter ego liability.

- 14 -

Case 1:08-cv-02844-CM Document 6 Filed 04/04/2008 Page 16 of 17

**28 U.S.C. §§ 157(b)(2) and (b)(5)**

Finally, the Adkins Claimants argue that the Debtor's Motion to Dismiss is an impermissible attempt to bypass Congress's command that personal injury claims be tried in the District Court. This argument is without merit.

Section 157(b)(2) of title 28 of the United States Code, which outlines a non-exhaustive laundry list of matter that fall within the category of "core" proceedings, specifically excludes from the definition of core the "liquidation or estimation of contingent or unliquidated personal injury or wrongful death claims against the estate for purposes of distribution in a case under title 11." 11 U.S.C. § 157(b)(2). Section 157(b)(5) goes to say that "the district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending…." 11 U.S.C. § 157(b)(5). However, as previously stated on the record at the hearing denying the Adkins Claimants' application for a stay pending the determination of their motion before the District Court to withdraw the bankruptcy reference, this matter <u>does not concern</u> "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims" so as to implicate Section 157(b)(2)(B), but rather merely concerns the allowance or disallowance of timely filed proofs of claim <u>as a matter of law</u>. *See* Transcript from Hearing on Motion for Stay Pending Motion of the Personal Injury Claimants dated March 25, 2008, at pp. 25-26 (emphasis supplied).

Alper has objected to the Adkins Claims (as reformulated in the New Adkins Claims) as legally insufficient, and courts in this Circuit have repeatedly held that proceedings to determine the allowance or disallowance of claims are core matters. *See Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1389 (2d Cir. 1990); *Enron Power Mktg., Inc. v. Nevada Power Co.* (*In re Enron Corp.*), No. 03-09332, 2004 WL 3015256, at *5 (S.D.N.Y. Dec. 28, 2004); *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr.

- 15 -

S.D.N.Y. 1990) ("the bankruptcy court must have jurisdiction to make the threshold determination of whether <u>as a matter of law</u>, a claim exists which can be asserted against the debtor, even if that claim sounds in personal injury or wrongful death") (emphasis supplied).

Therefore, as this matter is clearly within this Court's "core" jurisdiction, the Adkins Claimants' argument that the Debtor is attempting to impermissibly side-step the District Court is without merit.

<u>**CONCLUSION**</u>

For the reasons set forth above and for the reasons set forth in the Flake Opinion and the Holt/Armstrong Opinion, the Court finds that Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee.  Therefore, the Adkins Claims are disallowed and expunged.

IT IS SO ORDERED.


Dated:  New York, New York
        April 3, 2008


   _/s/ Burton R. Lifland_____
The Honorable Burton R. Lifland
United States Bankruptcy Judge

17584135\V-1