# No. 08-cv-3344 (CM)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

HARRY HOLT, et al.,

Appellants,

v.

ALPER HOLDINGS USA, INC.

Appellee.

───────────────────────────────

Appeal from the United States Bankruptcy Court
for the Southern District of New York

───────────────────────────────

**BRIEF OF APPELLANTS HARRY HOLT ET AL.**

Debo P. Adegbile (DA-0072)
Matthew Colangelo (MC-1746)
NAACP Legal Defense & Educational
   Fund, Inc.
99 Hudson St., 16th Floor
New York, New York 10013
Telephone: (212) 965-2200

Lorraine S. McGowen (LM-1644)
Alyssa D. Englund (AE-2300)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY  10103-0002
Telephone: (212) 506-5000

Attorneys for Appellants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

JURISDICTIONAL STATEMENT ........................................................................................ 1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW .......................................... 1

STATEMENT OF THE CASE.................................................................................................. 2

STATEMENT OF THE FACTS ............................................................................................... 3

SUMMARY OF THE ARGUMENT ........................................................................................ 5

ARGUMENT ........................................................................................................................... 7

I.      The Holt Plaintiffs' Alter Ego Claims Were Not Property of Saltire's Estate And
        Were Not Released in the Saltire Bankruptcy ................................................................ 7

        A.      Saltire Cannot Pierce Its Own Veil............................................................... 9

                1.      Choice of Law................................................................................... 9

                2.      Tennessee Law Does Not Permit a Bankruptcy Trustee to Pursue
                        an Alter Ego Claim ......................................................................... 11

                3.      Delaware Law Would Not Permit a Wholly-Owned Subsidiary to
                        Pierce Its Own Corporate Veil........................................................ 12

        B.      The Alter Ego Are Personal to the Holt Plaintiffs ................................................. 15

                1.      All Creditors Do Not Stand in the Same Position When Asserting
                        an Alter Ego Claim ......................................................................... 16

                2.      The Alter Ego Claims Cannot Belong to the Saltire Trustee Because
                        Saltire Participated with Alper in the Corporate Looting at Issue ............ 18

                3.      The Saltire Plan Did Not Release the Holt Plaintiffs' Personal
                        Claims ............................................................................................. 19

II.     The Holt Plaintiffs Have Properly Stated Alter Ego Claims Against Alper..................... 20

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Alfaro Motors Inc. v. Ward*,
  814 F.2d 883 (2d Cir. 1987).................................................................. 20

*Anadarko Petroleum Corp. v. Panhandle Eastern Corp*,
  545 A.2d 1171 (Del. 1988) ................................................................. 13

*Armstrong v. Pedie (In re Dakota Drilling, Inc.)*,
  135 B.R. 878 (Bankr. D.N.D. 1991) ..................................................... 14

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87, 98 (2d Cir. 2007)....................................................... 20, 21

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)................................................................... 21, 24

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*,
  336 F.3d 94 (2d Cir. 2003)..................................................................... 19

*Brown v. General Electric Capital Corp.* (*In re Foxmeyer*),
  290 B.R. 229 (Bankr. D. Del. 2003) ..................................................... 24

*Brown v. Vencap Investment Corp.*,
  1984 Tenn. App. LEXIS 3424 (Tenn. Ct. App., Mar. 31, 1984)................. 11, 16, 18

*Duke Energy Trading & Marketing, L.L.C., v. Enron Corp. (In re Enron Corp.)*,
  No. 01 B 16034, 2003 WL 1889040 (Bankr. S.D.N.Y. Apr. 17, 2003) ................. 13

*Fletcher v. Atex*,
  68 F.3d 1451 (2d Cir. 1995)......................................................... 21, 23

*Geyer v. Ingersoll Publications Co.*,
  621 A.2d 784 (Del. Ch. 1992)............................................................... 23

*Harco National Insurance Co. v. Green Farms, Inc.*,
  No. 1131, 1989 WL 110537 (Del. Ch. Sept. 19, 1989) ........................... 21

*Harper v. Delaware Valley Broadcasters, Inc.*,
  743 F. Supp. 1076 (D. Del. 1990)....................................... 16, 19, 21, 23

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)................................................................. 19

*In re 139-141 Owners Corp.*,
　313 B.R. 364 (S.D.N.Y. 2004) ........................................................................ 2

*In re D.H. Overmyer Telecasting Co*,
　56 B.R. 657 (Bankr. N.D. Ohio 1986) ............................................................ 19

*In re Phillips Petroleum Securities Litigation*,
　738 F. Supp. 825 (D. Del. 1990) ..................................................................... 23

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
　248 N.E.2d 576 (N.Y. 1969) ....................................................................... 9, 11

*Kalb, Voorhis & Co. v. American Financial Corp.*,
　8 F.3d 130 (2d Cir. 1993) .................................................................. 8, 9, 15, 17

*Kittay v. Flutie New York Corp. (In re Flutie New York Corp.)*,
　310 B.R. 31 (Bankr. S.D.N.Y. 2004) .............................................................. 24

*Koch Refining v. Farmers Union Central Exchange Inc.*,
　831 F.2d 1339 (7th Cir. 1987) ........................................................................ 15

*Liebert v. Grinnell Corp.*,
　194 A.2d 846 (Del. 1963) ............................................................................... 12

*Limor v. Buerger (In re Del-Met Corp.)*,
　322 B.R. 781 (Bankr. M.D. Tenn. 2005) .............................................. 11, 16, 18

*Mar-Kay Plastics, Inc. v. Reid Plastics, Inc. (In re Mar-Kay Plastics, Inc.)*,
　234 B.R. 473 (Bankr. W.D. Mo. 1999) ........................................................... 14

*Marks v. Wolfson*,
　188 A.2d 680 (Del. Ch. 1963) ........................................................................ 12

*Mixon v. Anderson (In re Ozark Restaurant Equipment Co.)*,
　816 F.2d 1222 (8th Cir. 1987) ................................................................... 14, 18

*Murray v. Miner*,
　876 F. Supp. 512 (S.D.N.Y. 1995) ......................................................... 8, 12, 15

*National City Bank v. Lapides (In re Transcolor Corp.)*,
　296 B.R. 343 (Bankr. D. Md. 2003) ............................................................... 14

*Pereira v. Cogan*,
　No. 00 Civ. 619, 2001 WL 243537 (S.D.N.Y. Mar. 8, 2001) ................... 12, 13

iii

*Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*,
   462 F.3d 666 (6th Cir. 2006) ............................................. 21

*Seidel v. Houston Casualty Co.*,
   375 F. Supp. 2d 211 (S.D.N.Y. 2005)................................. 21

*Selcke v. Hartford Fire Insurance Co. (In re Rehabilitation of Centaur Insurance Co.)*,
   632 N.E.2d 1015 (Ill. 1994)........................................ 14, 15

*Serio v. Ardra Insurance Co.*,
   761 N.Y.S. 2d 1 (N.Y. App. Div. 2003) ........................ 9, 10

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)........................................ 18, 19

*Sinclair Oil Corp. v. Levien*,
   280 A.2d 717 (Del. 1971) .................................................. 12

*Soviet Pan Am Travel Effort v. Travel Committee, Inc.*,
   756 F. Supp. 126 (S.D.N.Y. 1991)....................................... 9

*Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co.)*,
   102 F.3d 223 (6th Cir. 1996) ........................................ 13, 14

*St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc.*,
   884 F.2d 688 (2d Cir. 1989)...................... 8, 15, 16, 17, 19

*Steinberg v. Buczynski*,
   40 F.3d 890 (7th Cir. 1994) ........................................ 17, 18

*Town of Oyster Bay v. Occidental Chemical Corp.*,
   987 F. Supp. 182 (E.D.N.Y. 1997) .................................... 24

*Trenwick American Litigation Trust v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006)........................................... 13

*United States v. Union Corp.*,
   259 F. Supp. 2d 356 (E.D. Pa. 2003) ................................ 24

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
   933 F.2d 131 (2d Cir. 1991)............................................. 16

## STATUTES

11 U.S.C. § 541 ............................................................................................ 8, 14, 20

28 U.S.C. § 157 .................................................................................................... 5

28 U.S.C. § 158 .................................................................................................... 1

## OTHER AUTHORITIES

1 Fletcher Cyc. *Corporations* § 41.10 (2007) .............................................. 17

1 Fletcher Cyc. *Corporations* § 41.35 (2007) .............................................. 15

18 Am. Jur. 2d *Corporations* § 46 (1985) .................................................. 14

18 Am. Jur. 2d *Corporations* § 49 (2007) .................................................. 15

Fed. R. Bankr. P. 8002 ........................................................................................ 1

Fed. R. Bankr. P. 8006 ........................................................................................ 1

Fed. R. Bankr. P. 8013 ........................................................................................ 2

Fed. R. Bankr. P. 9006 ........................................................................................ 1

Richard L. Epling, *Trustee's Standing to Sue in Alter Ego or Other Damage Remedy Actions*,
6 Bankr. Dev. J. 191 (1989) .......................................................................... 15

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which provides for appellate jurisdiction over final judgments of the bankruptcy court.

On February 25, 2008, the United States Bankruptcy Court for the Southern District of New York (Judge Burton R. Lifland) issued its order and judgment granting the objections of Alper Holdings USA, Inc. to the proofs of claim filed by Appellants Harry Holt, Beatrice Holt, Sheila Holt-Orsted, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt, and David Brown (collectively, the "Holt Plaintiffs"). R 2285-96.[1] The Holt Plaintiffs filed a timely Notice of Appeal on March 6, 2008. R 2298-2301; Fed. R. Bankr. P. 8002(a), 9006(a).

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

**1.** Whether the Bankruptcy Court erred in holding that New York courts would apply Delaware law, instead of Tennessee law, where all of the transactions underlying the Holt Plaintiffs' claims occurred in Tennessee.

**2.** Whether the Bankruptcy Court erred in holding that under Delaware law, Alper's wholly-owned subsidiary would have been permitted to pierce its own corporate veil, and therefore that alter ego causes of action belonged solely to the subsidiary and could not be asserted by the Holt Plaintiffs.

**3.** Whether the Bankruptcy Court erred in holding that under Delaware law, the Holt Plaintiffs' alter ego claims did not involve any personal injury to them, but rather involved only a general harm to Alper's wholly-owned subsidiary.

---

[1] Citations to "R ___" are to the Appendix to the Holt Plaintiffs' Designation of Record on Appeal, filed pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure.

This Court reviews factual conclusions of the Bankruptcy Court for clear error, *see* Fed. R. Bankr. P. 8013, and reviews legal conclusions *de novo*. *See In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004).

## STATEMENT OF THE CASE

The litigation that forms the basis of the Holt Plaintiffs' claims was originally filed in state court in December 2003, against Alper Holdings USA, Inc. ("Alper"), an Alper subsidiary named Saltire Industrial, Inc. ("Saltire"), the City of Dickson, Tennessee, and the County of Dickson, Tennessee. R 10-23. The complaint alleged state-law claims for personal injury and property damage arising out of groundwater contamination caused by the disposal of the toxic chemical trichloroethylene ("TCE") in Dickson County. *Id.* The Holt Plaintiffs subsequently amended their complaint to add federal statutory and constitutional civil rights claims for intentional racial discrimination against the City, the County, two agencies of the State of Tennessee, and the United States Environmental Protection Agency. R 352-79. The litigation has been transferred to the federal district court for the Middle District of Tennessee, where it is currently proceeding against all defendants except Alper. *See generally* Docket of *Holt v. City of Dickson, et al.*, 3:07-cv-00727 (M.D. Tenn.).

The Holt Plaintiffs' complaint alleges that Alper is the alter ego of its subsidiary, Saltire, and that Alper should therefore be held liable to the Holt Plaintiffs for their personal injury, wrongful death, and property damages. R 352-79.

In July 2007, Alper filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Each of the Holt Plaintiffs timely filed a proof of claim with the Bankruptcy Court. R 1-253. Alper

objected to the Holt Plaintiffs' claims, R 317-38, and the Bankruptcy Court granted Alper's

objection after briefing and argument. The court held that the Holt Plaintiffs could not assert

alter ego claims against Alper because alter ego claims against Alper belonged to Saltire and

were released in Saltire's earlier bankruptcy. R 2291-95. This appeal followed.

**STATEMENT OF THE FACTS**

The Holt Plaintiffs are eleven family members who belong to three generations of an

African-American family that have owned the same property on Eno Road in Dickson County,

Tennessee, for over one hundred years – going back to the late nineteenth century. R 352-59.

In 1968, the City of Dickson opened a city dump and landfill (the "Landfill") on Eno

Road adjacent to the Holt property. R 359-60. The Holt Plaintiffs have alleged that from 1968

to 1985, Saltire routinely disposed of industrial wastes including TCE at the Landfill, at Saltire's

nearby manufacturing facility, and at other locations in the surrounding area. R 360-61. TCE

and other wastes disposed of by Saltire drained into the groundwater under the Landfill and at

other disposal locations, and migrated through the groundwater to contaminate the Holt

Plaintiffs' water well. R 361, 364-69. Each of the Holt Plaintiffs has since developed serious

physical injuries, including cancer, neurological impairments, deformities of the reproductive

organs, skin ailments and disfiguration, and immune deficiency. R 357-59. One of the plaintiffs,

Harry Holt, died of cancer in January 2007. R 357, 368.

The Holt Plaintiffs originally filed suit in December 2003. R 10-23. The Holt Plaintiffs

allege that the personal injuries and extensive property damage were caused by Saltire's disposal

of TCE and other wastes at the Landfill, the manufacturing facility, and other locations. R 363-

69. The Holt Plaintiffs further allege that Alper is the alter ego of Saltire, and is therefore liable

on the claims of trespass, battery, permanent nuisance, negligence, wrongful death, and punitive

3

damages included in the Holt Plaintiffs' complaint.  R 355-56, 364-69.  The Holt Plaintiffs' lawsuit seeks declaratory, injunctive, and monetary relief against Saltire, Alper, the City of Dickson, and the County of Dickson for the personal injuries and property damage alleged.[2]  R 353-54, 376.

In August 2004, Saltire filed a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  In March 2006, the Bankruptcy Court entered an order confirming Saltire's Modified First Amended Chapter 11 Plan of Liquidation (the "Saltire Plan").  R 462-88, 494-529.  Pursuant to the Saltire Plan, the Saltire Industrial, Inc. Creditors Liquidating Trust Agreement became effective with Wayne Smith as the Liquidating Trustee (the "Saltire Trustee").  R 494-529.  The Saltire Plan incorporates the terms of a settlement agreement between Saltire and Alper, its parent company, which provided that Saltire would release any legal causes of action it held against Alper in exchange for a one million dollar payment from Alper to Saltire and the waiver of any claims Alper may have held against the Saltire estate.  R 501, 522.  The Saltire release of claims did not release any claims that non-debtor third parties (like the Holt Plaintiffs) held against either Saltire or Alper that were not property of the Saltire estate.  R 522.

---

[2] The Holt Plaintiffs' lawsuit also seeks relief against the governmental defendants for intentional racial discrimination in violation of the Fourteenth Amendment to the United States Constitution and Title VI of the Civil Rights Act of 1964.  R 353-54, 376.  The civil rights claims allege that government officials were aware since at least 1988 that the well-water of properties adjacent to the landfill was contaminated with TCE; that white families adjacent to the landfill were warned by the governmental defendants and by environmental consultants retained by Alper and Saltire not to drink the water and were put on the municipal water supply; but that the African-American family (the Holt family) was repeatedly and affirmatively assured for almost fifteen years that their water was safe to drink.  R 361-63, 371-75.  It was not until 2000 that the Holt Plaintiffs were placed on the municipal water supply, and even at that point, the Holt Plaintiffs were never warned by any of the defendants of the health risks associated with TCE exposure.  R 363.

In June 2007, the United States District Court for the Southern District of New York (Judge Alvin K. Hellerstein) ordered the bankruptcy reference withdrawn as to the Holt Plaintiffs' claims against Saltire, and ordered the Holt litigation against all defendants transferred in its entirety to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 157(b)(5) (providing for the trial of personal injury tort and wrongful death claims in the federal district court where the bankruptcy case is pending or where the claims arose).

Shortly thereafter, in July 2007, Alper filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  (Alper's petition for bankruptcy relief stayed the Holt litigation in the Middle District of Tennessee as against Alper, but that litigation is proceeding against the remaining defendants.)  The Holt Plaintiffs timely filed proofs of claim with the Bankruptcy Court, R 1-253, to which Alper objected, R 317-38.  The Bankruptcy Court granted Alper's objection in February 2008, and this appeal followed.  R 2291-96, 2298-99.

## SUMMARY OF THE ARGUMENT

The Holt Plaintiffs are African-American homeowners whose family has owned the same property in Dickson County, Tennessee for over a century.  They are innocent bystanders who were involuntarily exposed to carcinogenic industrial pollutants simply by using the water that came into their home each day from a well that had been drilled generations earlier.  As a result of this exposure, they have suffered and continue to suffer serious physical injuries and death.

The Holt Plaintiffs' property is extensively contaminated with TCE in the groundwater and soil.  Saltire, a former subsidiary of Alper, was an industrial company with an undisputed history of using TCE at Saltire's manufacturing facility in Dickson County for decades.  Saltire routinely disposed of industrial wastes, including TCE, at the Landfill adjacent to the Holt farm and at the Saltire manufacturing plant nearby.  While others were warned by governmental actors

and by environmental consultants retained by Saltire of the potential dangers in using the water, the Holt Plaintiffs were not.

The Holt Plaintiffs allege that Saltire, Alper, and Alper's predecessor-in-interest (First City Industries Inc.) deliberately undertook to evade potential and known liabilities springing from their mishandling of TCE. Alper – Saltire's direct and sole owner – was aware of potential liability to the Holt Plaintiffs for causing personal injury and property damage. Alper nonetheless embarked on a deliberate scheme to dissipate Saltire's assets in order to avoid potential and known liabilities. As a result of Alper's actions, Saltire was left with no operations, no employees, no assets, and no ability to pay environmental claims. Alper and Saltire then resorted to commencing serial bankruptcy filings in an effort to evade entirely any liability to the Holt Plaintiffs.

In the bankruptcy proceedings below, the Bankruptcy Court disallowed the Holt Plaintiffs' alter ego claims against Alper on the ground that those claims belonged to Saltire and were released in Saltire's bankruptcy. Under applicable state law, alter ego claims were not property of the Saltire estate and could not have been released in Saltire's bankruptcy. A cause of action belongs to a bankruptcy estate only if the claim is one that the debtor had a right to assert under state law, *and* is a claim that is general to the debtor corporation instead of personal to the creditors. Under the law of both Tennessee and Delaware, Saltire – as a wholly-owned subsidiary of Alper – would not have been permitted to pierce its own corporate veil to recover against Alper. Moreover, the Holt Plaintiffs' alter ego claims are not generalized claims because they are not claims that every creditor could bring. In addition, well-settled caselaw in the Second Circuit prohibits a trustee from recovering any damages from a third party when the

bankrupt corporation joined with that third party (here, Saltire and Alper, as alleged) in looting the debtor's assets.

The Bankruptcy Court's decision rests on a misapplication of the law and causes an inequitable result.  Accordingly, the Holt Plaintiffs request that this Court vacate the Bankruptcy Court's order and remand so that the merits of the Holt Plaintiffs' claims against Alper can be adjudicated in an appropriate venue.

## ARGUMENT

### I.    The Holt Plaintiffs' Alter Ego Claims Were Not Property of Saltire's Estate And Were Not Released in the Saltire Bankruptcy.

The Bankruptcy Court disallowed the Holt Plaintiffs' claims on the ground that alter ego claims against Alper belonged to Saltire and were released in Saltire's bankruptcy.  R 2295.  This ruling was incorrect because the Holt Plaintiffs' claims against Alper for alter ego liability were not part of Saltire's estate under either Tennessee or Delaware law, and could not have been released by Saltire pursuant to the Saltire Plan.  Moreover, even if either state would permit a debtor corporation to pierce its own veil, the Holt Plaintiffs' claims are personal to them because they are claims that could not be brought by every creditor.  Therefore, the release contained in the Saltire Plan did not release the Holt Plaintiffs' alter ego claims against Alper.

The Saltire Plan incorporates the terms of a settlement agreement with Alper.  R 501, 522.  The Saltire Plan summarizes the settlement as the payment of one million dollars from Alper to Saltire and the waiver of any claims Alper may have held against Saltire's estate, in exchange for Saltire's agreement to release any legal causes of action it held against Alper.  R 501, 522.  The Saltire release of claims provides in material part:

> The Debtor . . . acquits and forever discharges Alper . . . from any and all actions, causes of action, [and] liabilities . . . in any way relating to the Debtor . . . that the Debtor could assert directly or

> any Holder of a Claim . . . could assert derivatively or on behalf of
> the Debtor or its estate . . . . *Notwithstanding the foregoing, the
> above release does not release claims any nondebtor third party
> may hold against any of the Released Parties, except to the extent
> any nondebtor third party is asserting a claim that is property of
> the Debtor's Estate.*

R 522 (emphasis added).  By its terms, the Saltire release only settles claims that were property

of the Saltire estate.  The Saltire release does not purport to settle claims of nondebtor third

parties, such as claims of the Holt Plaintiffs, that were never property of the Saltire estate.

Section 541 of the Bankruptcy Code defines property of the estate as "legal or equitable

interests *of the debtor* in property as of the commencement of the case."  11 U.S.C. § 541(a)(1)

(emphasis added).  Only legal causes of action held *by the debtor* at the commencement of the

case are property of the estate, and only such claims may be litigated or settled by the bankruptcy

trustee as the representative of the debtor's estate.

The Second Circuit follows a two-part inquiry to determine whether a cause of action

belongs to the bankruptcy trustee and is considered property of the estate: (1) the claim must be

one that the debtor had a right to assert under the applicable state law, and (2) the claim must be

general to the corporation rather than personal to the creditors.  *See Kalb, Voorhis & Co. v. Am.

Fin'l Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,

884 F.2d 688, 700-02 (2d Cir. 1989).  An alter ego claim against Alper only "belongs to the

[Saltire] trustee if (1) 'under governing state law the debtor could have asserted an alter ego

claim to pierce its own corporate veil,' and (2) plaintiffs' claim 'is a general one,' of the type that

'could be brought by any creditor of the debtor.'"  *Murray v. Miner*, 876 F. Supp. 512, 516

(S.D.N.Y. 1995) (citations omitted) (quoting *Kalb*, 8 F.3d at 132, and *St. Paul*, 884 F.2d at 701).

8

### A.    Saltire Cannot Pierce Its Own Veil.

Under the law of both Tennessee and Delaware, a wholly-owned subsidiary would not be permitted to pierce its own veil.  Because the Saltire Trustee could not have maintained an action to pierce its own veil under either state's law, the Holt Plaintiffs' alter ego claims against Alper were not property of the Saltire estate and were not released through the Saltire Plan.

### 1.    Choice of Law.

The Bankruptcy Court held that because Delaware is Alper's state of incorporation, Delaware law applies to the question of whether a bankruptcy trustee has standing to assert veil-piercing claims.  R 2293.

Because New York is the forum state, New York's choice of law principles determine which state's law applies.  *See Kalb*, 8 F.3d at 132.  New York follows an "interest analysis" requiring courts to apply the law of the jurisdiction with the greatest interest in the application of its law, in light of the purposes of the particular laws in conflict.  *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969).

Although New York courts often apply the law of the state of incorporation to questions regarding shareholder liability and corporate form, *see Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991), this is not a *per se* rule.  New York courts do not exclusively apply the law of the state of incorporation to such questions.  In *Serio v. Ardra Ins. Co.*, 761 N.Y.S. 2d 1 (N.Y. App. Div. 2003), for example, the Appellate Division declined to apply Bermuda law to a veil-piercing question even though the defendant was incorporated in Bermuda.  *See id.* at 1.  The court explained that because the defendant's contacts with Bermuda were minimal and all the transactions complained of occurred in New York, it was proper to apply New York law as the jurisdiction with the greatest interest in the litigation.  *See id.*

This Court should follow the *Serio* holding and apply Tennessee law to the question of whether the Saltire Trustee possessed and subsequently released the alter ego claims against Alper, because Tennessee has the greater interest in this litigation.[3]  As in *Serio*, both Alper and Saltire have minimal contacts with Delaware, notwithstanding that each chose to incorporate in that state.  The Holt Plaintiffs have had no contact, through contract or otherwise, with Alper or Saltire in Delaware, and had no reason to anticipate being subjected to the laws of that state.  By contrast, all of the transactions underlying the Holt Plaintiffs' claims occurred in Tennessee.  Saltire operated its manufacturing facility in Tennessee.  The Holt Plaintiffs' home is located in Tennessee, within a few hundred feet of the landfill where Saltire disposed of its toxic waste.  The pollution that forms the basis for the complaint occurred in Tennessee, as did the extensive personal injuries and property damage that the Holt Plaintiffs have suffered.  In addition, Alper acquired Saltire with knowledge of its significant environmental and tort liabilities in Tennessee.  Tennessee, as the polluted state whose citizens were injured, has the paramount interest in seeing that responsibility for this harm is not evaded through, as the Holt Plaintiffs have alleged, the intentional diversion of corporate assets.  Delaware's interest in entities organized under its incorporation laws neither meets nor exceeds Tennessee's interest in this litigation.

When deciding the choice of law question, the Bankruptcy Court did not conduct any balancing of the competing interests of each state; instead, the court mistakenly treated the choice of law question as if a *per se* rule existed.  R 2293.  Because the New York interest analysis is context-specific and dependent upon the particular facts and claims at issue, *see*

---

[3] As discussed *infra* and as argued to the Bankruptcy Court, R 2237, 2239-40, neither Tennessee nor Delaware law would permit a wholly-owned subsidiary to pierce its own corporate veil, and therefore the alter ego claims were not included in the Saltire release regardless of which state's law is applied.  Nonetheless, a conflict of law exists because Tennessee and Delaware law are not identical, and the Holt Plaintiffs submit that Tennessee law is more appropriately applied.

*Intercontinental Planning*, 248 N.E.2d at 582, this Court should hold that in these circumstances, New York courts would apply Tennessee law to the question of whether a bankruptcy trustee has standing to assert veil-piercing claims.

> **2.    Tennessee Law Does Not Permit a Bankruptcy Trustee to Pursue an Alter Ego Claim.**

Under Tennessee law, a bankruptcy trustee does not have standing to pursue an alter ego action on the debtor's behalf because the debtor cannot pierce its own corporate veil.  In *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781 (Bankr. M.D. Tenn. 2005), the bankruptcy trustee for a debtor corporation brought suit seeking, inter alia, to recover from certain of its parent corporations on a veil-piercing theory.  *See id.* at 830.  Relying on clear precedent from the Tennessee Court of Appeals, the bankruptcy court held that under Tennessee law the trustee did not have standing to bring an action to disregard the corporate form.  *Id.* at 829-35 (discussing *Brown v. Vencap Inv. Corp.*, 1984 Tenn. App. LEXIS 3424 (Tenn. Ct. App., Mar. 31, 1984)). This holding was based on the nature of the alter ego doctrine under state law:

> The doctrine of alter ego does not create assets for or in the corporation.  It simply fastens liability upon the individual who uses the corporation merely as an instrumentality in the conduct of his own personal business.  The liability springs from fraud.  The fraud from which it arises is not perpetrated upon the corporation, but upon third persons dealing with the corporation.  And the doctrine has been invoked only at the behest of such third parties as have suffered injury by reason of the fraud.

*Id.* at 833 (quoting *Vencap*, 1984 Tenn. App. LEXIS 3424, at *13-14).  The court concluded that an action to pierce the corporate veil "'is a right vested in the individual creditors.  It is not a right which belongs to the bankrupt and under the Bankruptcy Act the trustee has no standing to maintain such action.'"  *Id.* (quoting *Vencap*, 1984 Tenn. App. LEXIS 3424, at *8-9); *see also id.* at 833-34 ("Tennessee law does not support this trustee's standing to pierce the corporate veils [of the defendants] to create a single business enterprise.").

Because the Saltire Trustee could not have maintained an action under Tennessee law to pierce Saltire's veil, the Holt Plaintiffs' alter ego claims against Alper were not property of the Saltire estate and were not released through the Saltire Plan.

> **3.    Delaware Law Would Not Permit a Wholly-Owned Subsidiary to Pierce Its Own Corporate Veil.**

If this Court concludes that choice of law principles require the application of Delaware law, the Court should still hold that veil-piercing claims against Alper were not property of the Saltire estate and therefore were not released through the Saltire Plan.

The Bankruptcy Court held that "[u]nder Delaware law, an alter ego cause of action constitutes a corporate right," R 2293-94, but no Delaware court has ever addressed this question.  The Bankruptcy Court's conclusion was based instead on the holdings of a few federal courts that have attempted to predict whether a Delaware court would permit a subsidiary to pierce its own corporate veil.  *See id.* (citing cases).  These cases are inapt.

In *Murray v. Miner*, 876 F. Supp. 512 (S.D.N.Y. 1995), for example, the court recognized that no Delaware cases have permitted a debtor corporation to pierce its own corporate veil, but the court analogized to cases permitting a "subsidiary [to] maintain an action against its corporate parent or controlling shareholder."  *Id.* at 516 (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717 (Del. 1971), *Liebert v. Grinnell Corp.*, 194 A.2d 846 (Del. 1963), and *Marks v. Wolfson*, 188 A.2d 680 (Del. Ch. 1963)).  Each case that the *Murray* court identified as analogous involved a corporate parent that owed a fiduciary duty to its subsidiary.  *See id.* at 516-17.  The court therefore reasoned that "under Delaware law, *because of a corporate parent's fiduciary duties to a subsidiary*, the subsidiary may institute proceedings against the parent if it has sustained liability to third parties as a result of the parent's control."  *Id.* (emphasis added); *see also Pereira v. Cogan*, No. 00 Civ. 619, 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8,

2001) (agreeing with *Murray*'s analogy to "claims for breaches of fiduciary duty brought by a subsidiary against its parent, which are recognized under Delaware law"); *Duke Energy Trading & Mktg., L.L.C., v. Enron Corp. (In re Enron Corp.)*, No. 01 B 16034, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) (agreeing with *Murray* and *Pereira* because of "the fact that Delaware law allows a subsidiary to maintain an action against a corporate parent").

The state-law analogy on which *Murray* is based does not apply to this case. Saltire was a wholly-owned subsidiary of Alper at the time Saltire filed for bankruptcy. R 2043. Under Delaware law, a corporate parent does *not* owe fiduciary duties to a wholly-owned subsidiary merely by virtue of its ownership of the subsidiary's corporate stock. *See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191-92 & n.66 (Del. Ch. 2006) ("Under settled principles of Delaware law, a parent corporation does not owe fiduciary duties to its wholly-owned subsidiaries or their creditors."); *see also Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988). Where the subsidiary is wholly owned by its parent, Delaware law would *not* permit the subsidiary to pursue claims for breaches of fiduciary duty.

The Sixth Circuit addressed this very question and held that a wholly-owned subsidiary could never pierce its own corporate veil under Michigan law, and that therefore a veil-piercing claim could not be part of the debtor's estate. *See Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 224-26 (6th Cir. 1996). The Sixth Circuit explained that because of the elements required to establish liability on a veil-piercing theory under Michigan law, no wholly-owned subsidiary could ever successfully assert such a claim:

> [I]n order for a subsidiary to be able to assert an alter ego claim against its parent company, the subsidiary would need to show that it suffered "an unjust loss or injury" as a result of being used by the parent as an instrumentality to commit a fraud or wrong against itself. Since it is axiomatic that one cannot commit a fraud or wrong against oneself, a subsidiary would never be able to satisfy

> the standard for disregarding corporate identity under Michigan law.

*Id.* at 226.  The Sixth Circuit further explained that "basic principles of corporations law" supported its conclusion, because "[t]he general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders."  *Id.* (citing 18 Am. Jur. 2d *Corporations* § 46 (1985)).

The Illinois Supreme Court has also held that a wholly-owned subsidiary cannot pierce its own corporate veil under that state's law.  *See Selcke v. Hartford Fire Ins. Co. (In re Rehab. of Centaur Ins. Co.)*, 632 N.E.2d 1015 (Ill. 1994).  In *Selcke*, the rehabilitator of an insolvent insurance company claimed the right to assert an alter ego claim against the insurance company's parent, which was its sole shareholder.  *Id.* at 1016.  The Illinois Supreme Court held that the rehabilitator did not have standing to assert the alter ego action because the corporation had no right to pierce its own corporate veil under Illinois law.  *Id.* at 1017-20.  The court explained that "[t]he alter ego doctrine was developed for and has been traditionally used by *third persons* injured due to their reliance on the existence of a distinct corporate entity," and that it would be counter to this general principle for a wholly-owned subsidiary to be permitted to pierce its own veil.[4]  *Id.* at 1018 (emphasis added).  In so holding, the Illinois Supreme Court expressly

---

[4] Although the facts of that case involved a wholly-owned subsidiary, *see Selcke*, 632 N.E.2d at 1016, the Illinois Supreme Court did not limit its language to this circumstance only, and instead held more broadly that no subsidiary corporation may pierce its own corporate veil through its trustee.  *Id.* at 1017 ("We conclude that a corporation may not assert an alter ego claim against its own shareholders.").

Numerous other courts have held that the law of particular states does not permit a debtor subsidiary to pierce its own corporate veil, and that alter ego claims therefore do not belong to the trustee under § 541(a) of the Bankruptcy Code.  *See, e.g.*, *Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222, 1224-26 (8th Cir. 1987) (applying Arkansas law); *Nat'l City Bank v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 363-366 (Bankr. D. Md. 2003) (applying Maryland law); *Mar-Kay Plastics, Inc. v. Reid Plastics, Inc. (In re Mar-Kay Plastics, Inc.)*, 234 B.R. 473, 480-81 (Bankr. W.D. Mo. 1999) (applying Missouri law); *Armstrong v. Pedie (In re Dakota Drilling, Inc.)*, 135 B.R. 878, 884 (Bankr. D.N.D. 1991) (applying North

disagreed with a prior decision of the Seventh Circuit, which had interpreted Illinois law to permit such a claim.  *Id.* at 1019-20 (discussing *Koch Refining v. Farmers Union Cent. Exch. Inc.*, 831 F.2d 1339 (7th Cir. 1987)).  The court criticized *Koch Refining* as "'[involving] a reading of state law [which] fairly tortures the traditional notion that alter ego actions are for the benefit of creditors only and do not belong to the corporation.'"  *Id.* at 1019 (quoting Richard L. Epling, *Trustee's Standing to Sue in Alter Ego or Other Damage Remedy Actions*, 6 Bankr. Dev. J. 191, 196 (1989)) (alterations in original).

Consistent with the rulings of other courts that have addressed this question, a Delaware court would not permit a wholly-owned subsidiary to pierce its own corporate veil.  Therefore, the alter ego claims against Alper could not have been released through the Saltire Plan.

**B.      The Alter Ego Claims Are Personal to the Holt Plaintiffs.**

The *St. Paul/Kalb* test is stated in the conjunctive: in order for veil-piercing claims to be property of the Saltire estate, such claims must be *both* (1) claims that a debtor could bring against its parent under applicable state law, *and* (2) claims that are general to the corporation rather than personal to the creditors.  *Murray*, 876 F. Supp. at 516.  The Holt Plaintiffs have shown that Saltire, as a wholly-owned subsidiary, would not have been able to pierce its own corporate veil under either Tennessee or Delaware law.  Accordingly, this Court need go no further, and should conclude that veil-piercing claims against Alper were not property of the Saltire estate and were not released through the Saltire Plan.

---

Dakota law); *see also* 18 Am. Jur. 2d *Corporations* § 49 (2007) ("Generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders . . . .  Thus, a corporation may not bring an alter ego action against its parent shareholder, thereby piercing its own corporate veil."); 1 Fletcher Cyc. *Corporations* § 41.35 (2007) ("The corporate form may be disregarded only where equity requires such action to assist a third party.  Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his or her convenience.") (footnotes omitted).

If the Court concludes that Saltire could have pierced its own veil under applicable state law, the Court should still hold that the alter ego claims were not released through the Saltire Plan because those claims are personal to the Holt Plaintiffs. Accordingly, alter ego claims are properly asserted by the Holt Plaintiffs and not the Saltire Trustee.

### 1.     All Creditors Do Not Stand in the Same Position When Asserting an Alter Ego Claim.

The Second Circuit has held that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by *any creditor* of the debtor, the trustee is the proper person to assert the claim . . . ." *St. Paul*, 884 F.2d at 701 (emphasis added). Under both Tennessee and Delaware law, all creditors do *not* necessarily stand in the same position when asserting an alter ego claim. *Limor*, 322 B.R. at 833 ("'Under the holdings of our courts all creditors of a bankrupt corporation do not necessarily stand in the same position when asserting a claim against a third party on the alter ego theory. While some may be in a position to maintain their claims, others may not.'") (quoting *Vencap*, 1984 Tenn. App. LEXIS 3424, at *24-25); *Harper v. Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085-86 (D. Del. 1990) (discussing the "[n]umerous factors that come into play" when considering an alter ego claim, and examining not only corporate operations but also the particular circumstances of the party seeking to pierce the veil). Rather, alter ego claims present fact-specific inquiries that depend on the particular circumstances of each case. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (noting the "infinite variety of situations that might warrant disregarding the corporate form").

The Holt Plaintiffs alleged sufficient facts to state an alter ego claim against Alper, as discussed in Part II below. For example, the Holt Plaintiffs alleged that Alper and its predecessor acquired Saltire in the 1980s with knowledge of potential liability to tort plaintiffs

(like the Holts) who were affected by Saltire's groundwater contamination, R 553-56, and that Alper and its predecessor immediately began stripping Saltire of assets to evade that liability, R 556-63. However, not every creditor could state a claim. For example, many creditors' claims did not arise until decades after Alper's acquisition of Saltire, which could be a factor in determining whether a veil-piercing remedy is appropriate as to those creditors. *See, e.g.*, 1 Fletcher Cyc. *Corporations* § 41.10 (2007) (noting that the veil-piercing inquiry generally includes a determination that the parent and subsidiary operated as a single economic entity *at the time* of the challenged transactions). Because the Holt Plaintiffs' alter ego claim could not be brought by "any creditor" of the debtor, the Saltire Trustee could not assert the claim. *St. Paul*, 884 F.2d at 701.

The Bankruptcy Court's holding to the contrary approaches the conclusion that an alter ego claim is *always* a claim that is general rather than particularized, because a trustee's successful pursuit of that claim would enlarge the estate for all creditors. R 2294 (citing *Kalb*, 8 F.3d at 132). This conclusion is neither logical nor legally correct. In *Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994), the Seventh Circuit rejected the same conclusion that the Bankruptcy Court reached here. As Judge Posner, writing for the Seventh Circuit, explained: "The trustee argues that . . . any judgment he obtains will enure to the benefit of the bankrupt estate; he is therefore suing on behalf of the estate, as he is authorized to do. This reasoning is perfectly circular." *Id.* at 892 (explaining that *every* plausible damages action could conceivably benefit the estate, but that this cannot be a basis for assigning every such claim to the trustee). Judge Posner further clarified that the distinction between "personal" and "general" harms is not talismanic, but is simply an analytical approach that may assist a court in determining whether the corporation itself or its creditors may bring suit:

17

> When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. He has no interest in the suit. The claim in such a case is said to be "personal," not "general." That is not an illuminating usage. *The point is simply that the trustee is confined to enforcing entitlements of the corporation*. He has no right to enforce entitlements of a creditor.

*Steinberg*, 40 F.3d at 893 (emphasis added) (citations omitted).

The harm that the Holt Plaintiffs have alleged through their alter ego claims accrued to them as creditors, and not to Saltire as a corporation. *See Limor*, 322 B.R. at 833 ("'The doctrine of alter ego does not create assets for or in the corporation.'") (quoting *Vencap*, 1984 Tenn. App. LEXIS 3424, at *13); *accord Mixon*, 816 F.2d at 1225 ("[T]he nature of the alter ego theory of piercing the corporate veil makes it one personal to the corporate creditors rather than the corporation itself . . . ."). The alter ego claims are therefore personal to the Holt Plaintiffs and could not be asserted by the Saltire Trustee.

## 2. The Alter Ego Claims Cannot Belong to the Saltire Trustee Because Saltire Participated with Alper in the Corporate Looting at Issue.

In addition, the alter ego claims are not general claims and could not have been asserted by the Saltire Trustee because Saltire participated in the corporate looting that underlies the Holt Plaintiffs' alter ego claims. The Second Circuit held in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991), that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for damage to the creditors." *Id.* at 118; *see also id.* at 120 ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation.") (citing cases). Further, "[e]ven if there is some damage to the corporation itself, the trustee cannot recover if the malfeasor was the corporation's sole shareholder and decision

18

maker." *Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 99 (2d Cir. 2003).

As noted, Alper was Saltire's sole shareholder. R 2043. The Holt Plaintiffs alleged that Alper's looting of Saltire was undertaken with the knowledge and participation of Saltire's management, given that the management and operational structures of Alper and Saltire overlapped to the point of complete or near-complete identity for more than a decade. R 553-63. Because Saltire allegedly participated with Alper – its sole shareholder – in the diversion of Saltire's assets, the Saltire Trustee lacked standing to assert the personal claims of the Holt Plaintiffs. *See Wagoner*, 944 F.2d at 118-20 ("'[A] reorganization trustee lacks standing to assert the claims of creditors against third parties who allegedly aided the bankrupt in diverting its assets.'") (quoting *In re D.H. Overmyer Telecasting Co.*, 56 B.R. 657, 659 (Bankr. N.D. Ohio 1986)); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094-95 (2d Cir. 1995); *cf. Harper*, 743 F. Supp. at 1086 (declining to pierce the veil under Delaware law on behalf of a party who was "not an innocent outsider," but was instead a shareholder and director of the company with "intimate knowledge" of the company's formation and operation). The Holt Plaintiffs' alter ego claims against Alper therefore cannot be categorized as general claims that the Saltire Trustee was entitled to release.

**3.     The Saltire Plan Did Not Release the Holt Plaintiffs' Personal Claims.**

As noted in Part II below, the Holt Plaintiffs alleged sufficient facts to justify piercing the veil between Alper and Saltire, in light of their specific factual circumstances and the particular equities that accompany their personal injury claims. Because Alper has not shown, and could not show, that an "[alter ego] claim could be brought by any creditor of the debtor," the Saltire Trustee is *not* the proper person to assert an alter ego claim. *St. Paul*, 884 F.2d at 701.

19

An action to pierce the corporate veil becomes a part of the estate under § 541 of the Bankruptcy Code and may be asserted by the trustee only if it is allowed by state law, *and* the harm is general to the debtor instead of personal to the creditors. Because neither element is present here, the Holt Plaintiffs' veil-piercing claims against Alper were not property of the Saltire estate and were not released by Saltire. The Court should reverse the ruling of the Bankruptcy Court and hold that the Holt Plaintiffs' alter ego claims were not released through the Saltire Plan.

## II.     The Holt Plaintiffs Have Properly Stated Alter Ego Claims Against Alper.

The Bankruptcy Court disallowed the Holt Plaintiffs' claims only on the ground that alter ego claims were released through the Saltire Plan. R 2295. The Bankruptcy Court did not rule on Alper's alternative argument that the Holt Plaintiffs failed to allege sufficient facts to state an alter ego claim as a matter of law. *Id.*[5] However, because a reviewing court may affirm a lower court's judgment on a basis not relied upon below if supported by the record, *Alfaro Motors Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987), the Holt Plaintiffs briefly note that their allegations properly raised an alter ego claim as a matter of law. The Bankruptcy Court's judgment should not be affirmed on any alternative ground.

When considering a request for dismissal for failure to state a claim, courts must accept a plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor.[6]  *ATSI*

---

[5] The Bankruptcy Court's holding as to the Holt Plaintiffs stated: "While this Court previously did not address whether Saltire's alter ego claims were property of the estate, it is clear based upon the conduct presently alleged that such alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those alter ego claims were released under section 13.1 of the Saltire Plan. Accordingly, the Holt Claims are disallowed." R 2295 (citation and footnote omitted).

[6] As Alper stated in its brief on the Flake appeal, its objection to the facial validity of the contentions made by the tort plaintiffs is "in the nature of a motion to dismiss for failure to state a claim under rule 12(b) of the Federal Rules of Civil Procedure." Br. of Appellee Alper

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Courts may consider documents incorporated into the complaint by reference, public documents filed with the SEC, and documents known to the plaintiff and on which it relied in bringing suit. *Id.* The plaintiff's allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

To properly state alter ego claims against Alper sufficient to survive a motion to dismiss, the Holt Plaintiffs must have alleged facts to show "(1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'"[7] *Fletcher v. Atex*, 68 F.3d 1451, 1457 (2d Cir. 1995) (quoting *Harper*, 743 F. Supp. at 1085) (alterations in original).

The Holt Plaintiffs alleged ample facts to show that Alper and Saltire operated as a single economic entity. R 553-63. Delaware courts examine a number of factors to determine whether a corporation dominated its subsidiary so as to function as a single economic entity, including:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Harper*, 743 F. Supp. at 1085 (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. 1131, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)).

---

Holdings USA, Inc., at 11-12, *Flake v. Alper Holdings USA, Inc.*, No. 08-cv-02489 (CM) (S.D.N.Y.) (filed Apr. 18, 2008).

[7] The Tennessee and Delaware legal standards for piercing the corporate veil are substantially the same. *See Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672-76 (6th Cir. 2006). Although the Holt Plaintiffs assert that Tennessee law is properly applied to state law questions pursuant to the New York interest analysis, there is no need for a court to determine choice-of-law questions when there is no conflict between the laws of the jurisdictions involved. *See Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211, 218-19 (S.D.N.Y. 2005).

The Holt Plaintiffs' complaint[8] alleged that Saltire had no employees, officers, or board members separate from those of Alper; that Alper was the alter ego of Saltire and controlled Saltire's assets; and that Alper diverted Saltire's assets in such a manner as to leave Saltire grossly undercapitalized. R 355-56, 364-69. The Holt Plaintiffs further alleged in their proofs of claim that at various points Alper and Saltire shared the same business location, employees, officers, and directors; that Alper exerted control over Saltire's finances, policy, and business practices sufficient to be characterized as complete dominion; and that Alper used this control to remove all financial value from Saltire and place it into Alper's (or its affiliates') coffers and out of the reach of environmental claimants like the Holt Plaintiffs. R 4-8.

Moreover, to demonstrate that their allegations of corporate control were not simply conclusory assertions, the Holt Plaintiffs demonstrated to the Bankruptcy Court that there was support for those allegations through limited reference to factual material outside their pleadings. R 547-64, 565-2227. These facts showed, for example, that:

- Alper and its predecessor-in-interest overburdened Saltire with debt and divested Saltire of its most profitable businesses, leaving it inadequately capitalized, R 556-58, 1042, 1055-56, 1137-38, 1169-70;

- Saltire was insolvent the entire time Alper acted as its parent, R 558, 1263-65, 1979-2037, 2043;

---

[8] The Alper Claim Objection referred to the Holt Plaintiffs' proposed Second Amended Complaint (currently pending before the United States District Court for the Middle District of Tennessee), and Alper filed that complaint with the Bankruptcy Court in support of its objection. R 321, 347, 352-79. The Second Amended Complaint raises no new claims against any of the defendants, and merely clarifies the facts underlying the claims previously asserted.

By filing the Second Amended Complaint with the Bankruptcy Court in support of its Objection, Alper made clear that it is on notice of the facts alleged in that complaint, and waived any possible objection to consideration of that complaint when determining the facial validity of the facts alleged by the Holt Plaintiffs. Alper did not respond to, and therefore conceded, this waiver argument when raised by the Holt Plaintiffs before the Bankruptcy Court. R 551 n.9.

- Alper extracted millions of dollars from Saltire in fees for undocumented administrative services, despite Saltire's increasing deficit and known substantial environmental liabilities, R 558-59, 1260-65, 1340-42, 1365-66;

- Alper caused Saltire to make a series of asset transfers to various Alper subsidiaries and affiliates with no benefit to Saltire, including inter-company loans in the millions of dollars that were later written off in their entirety, R 559-60, 1236-39, 1243-59, 1278, 1315-16, 1334-36, 1384-88, 1436-38, 2039-44;

- Routine corporate formalities and record-keeping practices were ignored, R 561-62, 1298-99, 1302-04, 1324-25, 1376-77;

- The management and operational structures of Alper and Saltire overlapped to an overwhelming extent for more than a decade, with the same handful of people serving in identical roles in the two corporations simultaneously, R 558, 561-63, 1217-18, 1229-33, 1266-68, 1292-99, 1303-04, 1315-16, 1322-33, 1375-76, 1459, 1796-1803, 1809-10, 1814-21, 1875-77, 1953-54, 2065-69, 2084, 2154; and

- Alper treated Saltire as a facade in day-to-day operations, R 557-58, 1220-21, 1266-68, 1299, 1303-04, 1322-28, 1332-33, 1403-05, 1459, 1796-1803, 1815-21, 1875-77, 1953-54.

These well-pleaded allegations are more than sufficient to show that Alper and Saltire operated as a single economic entity. *See, e.g.*, *Harper*, 743 F. Supp. at 1085; *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793-94 (Del. Ch. 1992); *cf. In re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825, 838-39 (D. Del. 1990).

The Holt Plaintiffs also alleged facts to show an "'overall element of injustice or unfairness.'" *Fletcher*, 68 F.3d at 1457 (quoting *Harper*, 743 F. Supp. at 1085). As discussed above, the Holt Plaintiffs' allegations are that Alper and its predecessor divested Saltire of income-producing operations, saddled it with debt, loaned Saltire's assets to related entities, subsequently wrote off that debt in full, and siphoned off everything of value, all in the context of Alper's knowledge of the potential tort liabilities connected with Saltire's environmental contamination in Tennessee. These allegations support a claim that Alper misused the corporate form, working injustice on the Holt Plaintiffs by stripping assets that should be available to

provide redress for their personal injury and wrongful death claims. *See Brown v. Gen. Elec. Capital Corp.* (*In re Foxmeyer*), 290 B.R. 229, 242 (Bankr. D. Del. 2003); *see also United States v. Union Corp.*, 259 F. Supp. 2d 356, 390 (E.D. Pa. 2003); *Town of Oyster Bay v. Occidental Chem. Corp.*, 987 F. Supp. 182, 203 (E.D.N.Y. 1997); *Kittay v. Flutie N.Y. Corp.* (*In re Flutie N.Y. Corp.*), 310 B.R. 31, 45-47, 61 (Bankr. S.D.N.Y. 2004).

Because the alleged facts easily "raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, this Court should not affirm the Bankruptcy Court's judgment on any alternative ground.

## CONCLUSION

For the reasons stated above, the Holt Plaintiffs respectfully request that this Court hold that their alter ego claims were not property of the estate and were not released in the Saltire bankruptcy. The Court should vacate the Bankruptcy Court's order and remand so that the merits of the Holt Plaintiffs' claims against Alper can be adjudicated in an appropriate venue.

Dated: May 21, 2008
      New York, New York

Respectfully submitted,

NAACP Legal Defense & Educational Fund, Inc.

By:    */s/ Matthew Colangelo*
    Debo P. Adegbile (DA-0072)
    Matthew Colangelo (MC-1746)
    99 Hudson St., 16th Floor
    New York, NY 10013
    Telephone: 212-965-2200

-and-

    Lorraine S. McGowen (LM-1644)
    Alyssa D. Englund (AE-2300)
    ORRICK, HERRINGTON & SUTCLIFFE LLP

666 Fifth Avenue
New York, New York  10103
Telephone: 212-506-5000

Attorneys for Appellants Harry Holt et al.

## CERTIFICATE OF SERVICE

I certify that I served, by first-class mail with postage prepaid, a true and correct copy of the foregoing to:

Jessica L. Fink
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
*Attorney for Appellee Alper Holdings USA, Inc.*

Andrew Leblanc
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
*Attorney for Appellee Alper Holdings USA, Inc.*

Douglas T. Tabachnik
Law Offices of Douglas T. Tabachnik, P.C.
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Cliff I. Taylor
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
*Attorney for Flake Plaintiffs, Armstrong Plaintiffs, and Adkins Plaintiffs*

Dated: <u>May 21, 2008</u>.

<u>        /s/ Matthew Colangelo                    </u>
Matthew Colangelo (MC-1746)
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013
Telephone: (212) 965-2200

*Attorney for Appellants Harry Holt et al.*